Filed 5/1/15  Certified for Publication 6/1/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JULIO OREGEL,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PACPIZZA, LLC,<br><br>        Defendant and Appellant. | A141947<br><br>(Contra Costa County<br>Super. Ct. No. MSC12-01454) |

Seventeen months and more than 1,300 attorney hours after plaintiff Julio Oregel (Oregel) filed a class action against his former employer, defendant PacPizza, LLC (PacPizza), PacPizza petitioned to compel arbitration of Oregel's claims.  The trial court denied the petition, finding PacPizza waived its right to enforce a purported arbitration agreement between the two parties.  PacPizza appeals, primarily contending the court erred in denying the petition, and also asserting two other claimed errors.  We conclude the petition was properly denied, a conclusion that moots PacPizza's remaining arguments.  We thus affirm.

## BACKGROUND

### Preliminary Observation

We begin with an observation that, as the appellant, PacPizza was tasked with providing in its opening brief a summary of *all* evidence in the record that is material to the issues raised on appeal.  (Cal. Rules of Court, rule 8.204(a)(2)(C); *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)  This, it failed to do.  PacPizza sets forth a less-than-candid "Chronology of Pertinent Events Underlying Appeal" that suggests little

1

transpired in the 17 months between Oregel's filing of his complaint and PacPizza's filing of its petition to compel arbitration. Among other things, PacPizza has omitted *any* discussion of the extensive class discovery it conducted—an omission that is nothing short of brazen given the trial court's finding that Oregel was prejudiced by the discovery the parties conducted on his class allegations during the lengthy period of time PacPizza delayed in seeking arbitration.

What follows is a chronology of what actually transpired.

**Oregel's Job Application**

On July 24, 2008, Oregel submitted a written application for a job as a delivery driver at PacPizza's Pizza Hut restaurant in El Cerrito. At the bottom of the two-page application was a section titled, "Agreement," followed by five paragraphs in small font, estimated by Oregel to be 8-point font, an estimate PacPizza does not dispute—indeed, one that we believe may *overstate* the size of the font. The fifth paragraph, titled "Agreement to Arbitrate," stated: "Because of the delay and expense of the court system, Pizza Hut and I agree to use confidential binding arbitration, instead of going to court, for any claims that arise between me and Pizza Hut, its related companies, and/or their current or former employees. Without limitation, such claims would include any concerning compensation, employment (including, but not limited to, any claims concerning sexual harassment or discrimination), or termination of employment. Before arbitration, I agree: (i) first to present any such claims in full written detail to Pizza Hut; (ii) next, to complete any Pizza Hut internal review process; and (iii) finally, to complete any external administrative remedy (such as with the Equal Employment Opportunity Commission). In any arbitration, the then prevailing employment dispute resolution rules of the American Arbitration Association will apply, except that Pizza Hut will pay the arbitrator's fees, and Pizza Hut will pay that portion of the arbitration filing fee in excess of the similar court filing fee had I gone to court." Oregel's signature followed.[1]

---

[1] There is no evidence in the record that Oregel was given a copy of the application or saw it at any point after he submitted it to PacPizza.

2

**Oregel's Complaint and First Amended Complaint**

Oregel was apparently hired and worked as a delivery driver for some time. But on June 14, 2012, he filed a class action against PacPizza. The complaint alleged that PacPizza failed to fully reimburse delivery drivers for necessary expenses associated with using their personal vehicles to deliver pizza on PacPizza's behalf. It asserted two causes of action, one for failure to reimburse expenses in violation of Labor Code section 2802, the other for violation of California's Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.). And it sought compensatory and special damages, injunctive relief, disgorgement, attorney fees, and costs.

On July 30, 2012, PacPizza answered, generally denying Oregel's allegations. It also asserted 15 affirmative defenses, none of which alleged the existence of an agreement to arbitrate the dispute.

The court held case management conferences on September 5, 2012, and February 19, 2013. At the second conference, the parties agreed to a discovery schedule, and the court set September 30, 2013, as the deadline for Oregel to file his anticipated motion for class certification. The parties subsequently stipulated to a complete briefing schedule on the motion, with PacPizza's opposition due November 18 and the motion to be heard on December 6. PacPizza was silent on its intent to arbitrate Oregel's claims at both conferences and throughout discussions concerning the discovery and briefing schedules.

On March 4, 2013, Oregel filed a first amended complaint in which he reasserted his original two causes of action and added a third cause of action under the Private Attorneys General Act of 2004 (Lab. Code, § 2699, subd. (a)) (PAGA). To the relief sought in his original complaint, Oregel added civil penalties pursuant to Labor Code section 2699.

PacPizza answered Oregel's first amended complaint three days later, once again denying his allegations and asserting 15 affirmative defenses—again, none of which alleged the existence of an agreement to arbitrate the dispute.

3

**The Parties Conduct Extensive Class Discovery**

Meanwhile, in September 2012, discovery commenced with Oregel propounding written discovery, much of which related to class certification issues. PacPizza objected to a special interrogatory seeking the identities of putative class members, forcing Oregel to move to compel production of the information. The court ordered PacPizza to produce the putative class members' identities. At no time during the discovery dispute did PacPizza suggest class discovery was unwarranted because it intended to arbitrate Oregel's claims.

On November 6, 2012, PacPizza served responses to Oregel's outstanding written discovery and produced responsive documents. Significantly, Oregel's special interrogatory nos. 27 and 28 asked, respectively, "If YOU contend this action is affected by an arbitration agreement, state all facts supporting such contention," and "If YOU contend this action is affected by an arbitration agreement, IDENTIFY all DOCUMENTS supporting such contention." In response to both, PacPizza stated: "Plaintiff Julio Oregel signed an arbitration agreement on July 24, 2008, wherein he agreed to arbitrate all claims, including all employment related claims between he, Pizza Hut and all of Pizza Hut's related companies, which includes PacPizza." Although PacPizza appended Oregel's job application to its responses, it gave no indication that it intended to seek enforcement of the arbitration agreement.

The parties continued discovery for the next 12 months. As to some of the particulars, on November 9, 2012, PacPizza propounded 226 written discovery requests, in response to which Oregel provided written responses and produced 792 documents. Much of the discovery PacPizza propounded pertained to Oregel's class allegations. By way of example, its special interrogatories asked Oregel to "[i]dentify all dates on which each putative class member incurred business expenses that DEFENDANT failed to fully reimburse to each respective putative class member" and to "[s]tate the amount of money that YOU claim is owed to each putative class member for DEFENDANT'S alleged failure to fully reimburse each respective putative class member's business expenses." PacPizza asked Oregel to produce "[a]ll DOCUMENTS that support YOUR contention

4

that DEFENDANT did not fully reimburse the expenses incurred by each putative class members . . . when each made deliveries for DEFENDANT" and "[a]ll DOCUMENTS that YOU used to calculate the amount of business expenses DEFENDANT failed to reimburse to putative class members . . . ."

In April 2013, PacPizza propounded additional written discovery, and in May, June, and September 2013, PacPizza served substantive responses to Oregel's second, third, and fourth sets of discovery requests.

In summer 2013, Oregel deposed PacPizza Director of Finance Alan Fuss and employee Collin Day, both designated by PacPizza as its persons most knowledgeable regarding specific topics, including class issues. Oregel also deposed PacPizza president Brian Thompson and audit department head William Likens on class-related subjects, as well as a representative from PacPizza's outside computer vendor.

On September 9, 2013, PacPizza deposed Oregel. During the deposition, counsel for PacPizza asked general questions regarding the job application Oregel signed, including whether he understood it contained an arbitration agreement. Oregel responded, "No" to that question.

On September 13, 2013, PacPizza served a motion to compel discovery of questionnaires putative class members had submitted to Oregel's counsel. Although Oregel initially opposed the motion, the parties reached a resolution with the assistance of a court-appointed facilitator, and he ultimately produced copies of certain questionnaires.

**Oregel's Motion forClass Certification**

On September 30, 2013, Oregel filed his motion for class certification. It was supported by declarations of his counsel Eric Grover (appending 275 pages of supporting evidence), 33 putative class members, statistical consultant Richard Drogin, Ph.D., and Oregel himself.

On October 21, 2013, the parties stipulated to a modification of the briefing schedule on Oregel's motion to allow PacPizza time to depose the putative class members who had submitted declarations. The stipulation extended the due dates for PacPizza's opposition—originally due November 18—to December 6 and Oregel's reply

5

to January 8, 2014, and continued the hearing on the motion to January 31, 2014.  When the parties were working out the modified briefing and hearing schedule, PacPizza never mentioned that a petition to compel arbitration was imminent.

Between October 23 and November 27, 2013, PacPizza deposed 25 putative class members.  Three of those depositions took place on November 26 and 27, which, as will be seen, was the same day and the day after PacPizza petitioned to compel arbitration.  Oregel's counsel spent more than 100 hours of attorney time on those 25 putative class member depositions alone.

**PacPizza's Petition to Compel Arbitration**

On November 22, 2013—17 months after Oregel filed his complaint and despite all that had occurred in the litigation—PacPizza's counsel sent a letter to Oregel's counsel demanding arbitration of Oregel's claims.  Oregel's counsel promptly rejected the demand, advising, "That train left the station a long time ago.  We have been actively litigating the case in court for well over a year, including law and motion practice, written discovery and many depositions, including the dozens of depositions your firm has taken over the past few weeks."

Four days later, PacPizza filed a petition to compel arbitration, stay the proceedings, and dismiss Oregel's class allegations and PAGA claim (the petition).  Filed in support of the petition was Oregel's job application, among other documents.

**The Court Denies PacPizza's Request For a Stay Of the Proceeding**

On December 3, 2013, PacPizza applied ex parte for a stay of the proceeding pending decision on the petition or, alternatively, for an order shortening time to hear a motion for a stay.  The Honorable David B. Flinn denied ex parte relief on the grounds that a noticed motion was required and PacPizza had not presented any basis for shortening time on a motion.

**PacPizza's Opposition To Oregel's Motion For Class Certification**

In the absence of a stay, on December 6, 2013, PacPizza filed opposition to Oregel's motion for class certification, an opposition supported by four declarations and more than 1,000 pages of exhibits.

6

**Oregel's Opposition to PacPizza's Petition**

On December 24, 2013, Oregel filed opposition to PacPizza's petition. He argued that PacPizza waived any right to arbitration, the arbitration agreement was unconscionable and unenforceable, the agreement allowed class and representative arbitration, and the PAGA claim should not be sent to arbitration. In support of his opposition, Oregel submitted a declaration of his counsel Grover. In addition to detailing the exhaustive discovery the parties had conducted since the June 2012 filing of Oregel's complaint, Grover testified that he and other attorneys in his office had "spent more than 1300 hours working on this case. The lodestar associated with those hours exceeds well over $500,000. All of those hours were spent performing tasks related to getting the class certification motion on file and preparing for and defending depositions of putative class members who filed declarations in support of class certification . . . ." He further testified that his firm had incurred out-of-pocket costs exceeding $19,900.

**The Court Issues a Tentative Ruling Denying PacPizza's Petition**

On January 9, 2014, Judge Flinn issued a detailed tentative ruling denying PacPizza's petition, finding by clear and convincing evidence that it had waived its right to arbitrate Oregel's claims. He explained his reasoning as follows:

"In *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980 [(*Sobremonte*)], the Court of Appeal referred to the following factors: In determining waiver, a court can consider '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.' [¶] [Approved by the Supreme Court in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187].

7

"This action was filed on June 14, 2012 and the petition to compel arbitration was not filed until November 26, 2013, more than 17 months later. In the interim period the moving party Defendant substantially invoked 'litigation machinery' in many regards. Indeed, on September 5, 2012, Defendant posted jury fees with a demand for a jury trial. This certainly would lead any Plaintiff to believe that he or she had to fully prepare for a full trial. Case management conferences were held on September 5, 2012 and February 16, 2013, and in neither instance did Defendant suggest that it would seek to have the matter transferred to arbitration. At the latter conference the parties agreed to a discovery schedule and thereafter they commenced discovery. The schedule called for Plaintiff to prepare and file a motion to certify the action as a class action on or before September 30, 2013, and discovery proceeded at a pace to accomplish that. A very extensive motion was then prepared. Opposition was due on November 18 but a stipulation was reached extending that deadline to December 6.

"The only reasonable conclusion to be reached is that during its preparation of an opposition to class certification the Defendant made a strategy decision that its position would be strong in an arbitration setting. Defendant fully overlooks the extensive prejudice to the Plaintiff in having to do class certification discovery and prepare an extensive motion for certification, both of which would not play any part in an arbitration proceeding.

"The Court will deny the petition without prejudice. In the event that class certification should not occur in the action, the Court will consider the *possibility* that arbitration may be appropriate and not prejudice the Plaintiff."

**Hearing on PacPizza's Petition to Compel Arbitration**

PacPizza's petition came on for hearing on January 10, 2014 before Judge Flinn. He opened the hearing by observing, "Looks like an awful clear waiver to me. I mean I have read a lot of cases out of the appellate courts about waiving arbitration. And I've had a lot of cases, a lot of facts. I got to say you are the first one that posted jury fees and then came in and said 'I want arbitration.' " This, Judge Flinn continued, "sends a

8

message to your opponent that, despite the fact that you've got an arbitration clause, you see the case as staying in the courts. And he goes out and does the work."

Counsel for PacPizza argued against a finding of waiver, contending Oregel had not demonstrated he had suffered "actual prejudice," since merely incurring the cost of litigation was insufficient. After further argument about prejudice and waiver, Judge Flinn denied the petition, stating:

"[T]he fact of the matter is that I find the idea that a party with an arbitration clause, clearly the one that wanted the arbitration clause, that drafted the contract, can go into . . . litigation and keep an option open—there is none of these cases I have read that said option is a good idea.

"And my problem with the *St. Agnes* and the concept that you are talking about is the idea that you are really stating. And I simply wouldn't believe it if one told me, oh, no, we knew all along we were going to do this. I think it's—our society is just really deprived of benefits if we say in our judicial process you can make one side have to defend the case as a court case all the way up to the point where you exercise this, quote, 'option' to ask for arbitration.

"And I just don't think that option is intended. I don't think those cases talk about an option.

"I'm finding in this case that the conduct of [PacPizza] was to keep it as an option and by asking for a jury and then doing all the pre-certification work, and so I find prejudice."

**Oregel's Ex Parte Application To Delay Entry Of Judge Flinn's Order Denying The Petition**

Following the hearing, the parties submitted competing proposed orders. Before Judge Flinn signed an order, however, Oregel filed an ex parte application requesting that he not enter an order until Oregel's class certification motion—then set for hearing on January 31—was heard. The application was based on "the prejudice and irreparable harm that he and the putative class members will suffer if [PacPizza] is permitted to interrupt the class certification proceedings with an immediate appeal to [*sic*] the order

9

denying [PacPizza's] frivolous petition to compel arbitration filed 17 months after the case was first filed." As Oregel reasoned, "If [PacPizza] is allowed to file its appeal before a ruling is issued on the class certification motion and the appeal is denied (as is surely the case), then the parties will have to wait one to two years to have the fully briefed certification motion heard. Then, if the motion for class certification is denied, another one to two years will pass before the parties know whether or not the case will proceed as a class action. It makes far more sense to deal with any appeals all at once. Either both orders will be the subject of an appeal (if class certification is denied) or, if certification is granted, the parties will at least know that the case will proceed as a class action if the appeal of the order denying the petition to compel is denied."

The application was considered by the Honorable George V. Spanos, who agreed with Oregel and granted it "[b]ased on the facts presented [and] the interests of justice . . . ."[2]

### PacPizza's Motion For Reconsideration

On March 12, 2014, PacPizza moved for reconsideration of Judge Spanos's order. PacPizza noted that the class certification motion had been continued to April 9, 2014, and it had been deprived of its right to appeal Judge Flinn's denial of its petition since January 10.[3] It further explained that at the ex parte hearing, it had requested an opportunity for full briefing, a request Judge Spanos denied for lack of sufficient time, given that the class certification motion was then set to be heard on January 31, 2014. According to PacPizza, there was now time for full briefing, since the class certification motion had been continued to April.

Oregel opposed the motion as "untimely, moot and without merit," and the court set the motion for hearing on the same day as Oregel's class certification motion which,

---

[2] PacPizza sought writ review of Judge Spanos's ruling, which we denied. (A140842.)

[3] The motion was continued after PacPizza filed a peremptory challenge to Judge Spanos, necessitating a reassignment of the case.

10

the court noted, "effectively moot[ed]" PacPizza's request that the court revisit Judge Spanos's order.

**The Court Grants Oregel's Motion For Class Certification and Enters Orders On PacPizza's Petition and Motion For Reconsideration**

Oregel's class certification motion came on for hearing on April 23, 2014 before the Honorable Steven K. Austin. Following argument, Judge Austin granted the motion, noting that PacPizza's motion for reconsideration was thus moot.

On May 14, 2014, Judge Austin entered an order denying PacPizza's petition. To the language contained in Judge Flinn's tentative ruling, Judge Austin's order added the following paragraph: "Defendant's conduct has also prejudiced Plaintiff due to the expenditure of time and expense that could have been avoided if Defendant had filed its petition to compel individual arbitration early in the litigation. Any potential cost-saving or time-saving benefits of arbitration have been lost due to Defendant's delay that forced Plaintiff to fully work up the case to prepare it for class certification. (*Sobremonte, supra,* 61 Cal.App.4th at 996.)"

Judge Austin also entered orders granting Oregel's motion for class certification and denying as moot PacPizza's motion for reconsideration of Judge Spanos's order.

PacPizza timely appeals from the denial of its petition.

## DISCUSSION

### Standard of Review

We begin with a discussion of the applicable standard of review, a standard on which the parties do not agree.

PacPizza suggests we are to review the order denying its petition de novo. In support, it quotes *Richards v. Ernst and Young* (9th Cir. 2013) 744 F.3d 1072, 1074, as follows: " 'Where, as here, the concern is whether the undisputed facts of defendant's pretrial participation in the litigation satisfy the standard of waiver, the question of waiver of arbitration is one of law which we review de novo.' "

Oregel submits that we are to review the order for an abuse of discretion. As he would have it, "An order denying arbitration commonly is reviewed for abuse of

11

discretion. 'Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court.' De Novo review applies only where the trial court's denial of a petition to arbitrate presents a pure question of law. [¶] Here, the trial court made the factual determination that, based on the evidence presented, [PacPizza] waived any right to arbitrate that may have existed. The trial court found that [PacPizza's] delay in bringing its petition was a strategic decision made only after [PacPizza] had reviewed Oregel's class certification motion and was in the process of deposing the putative class member declarants and preparing the opposition. [PacPizza] disputes that finding along with the trial court's other factual findings supporting its waiver determination. Abuse of discretion, therefore, is the appropriate standard of review." (Fns. omitted.)

In reply, PacPizza concedes "there is no bright line rule," quoting the following passage in *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60: " 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citation.] Alternatively, if the court's denial rests solely on a decision of law, then a *de novo* standard of review is employed. [Citations.]' " PacPizza then insists the de novo standard applies here, because "there was no dispute that a valid, enforceable arbitration agreement exists . . . ."

Our Supreme Court addressed this question in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187 (*St. Agnes*), providing a succinct summary we find instructive here: "Generally, the determination of waiver [of the right to arbitrate] is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court. [Citations.] 'When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.' [Citation.]" (*Id.* at p. 1196.)

Certainly PacPizza has not shown that Judge Flinn abused his discretion. And certainly his decision is supported by substantial evidence. But even were we to agree with PacPizza that a de novo standard applies, that the essential underlying facts are not

12

in dispute and only one inference may reasonably be drawn, we would conclude that that one inference fully supports Judge Flinn's ruling.

### The Law Governing Waiver of An Arbitration Agreement

The enforcement of a contractual arbitration provision is governed by Code of Civil Procedure section 1281.2, which provides in pertinent part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner . . . ." California law "reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims[, and] the party seeking to establish a waiver bears a heavy burden of proof." (*St. Agnes, supra,* 31 Cal.4th at p. 1195; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) Waiver will not be lightly inferred, and any doubts regarding waiver should be resolved in favor of arbitration. (*St. Agnes, supra,* at p. 1195.)

No single test defines the conduct that will constitute waiver of an arbitration right. Rather, courts look to a number of factors to determine whether waiver has occurred. (*St. Agnes, supra,* 31 Cal.4th at pp. 1195-1196.) In *St. Agnes*, the Supreme Court confirmed that a court may consider the following six factors in assessing a waiver claim: " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay

'affected, misled, or prejudiced' the opposing party." ' [Citation.]" (*Id.* at p. 1196; see also *Sobremonte v. Superior Court, supra,* 61 Cal.App.4th at p. 992.)

### The Trial Court Properly Denied PacPizza's Petition

Before delving into the question of whether PacPizza waived its right to arbitrate Oregel's claims, we address PacPizza's assertion that Oregel "conceded" the existence of a valid arbitration agreement. We see nothing in the record evidencing such a concession and, indeed, Oregel expressly "does not concede that the purported arbitration agreement would have been valid or enforceable" but for PacPizza's waiver. Contrary to PacPizza's representation, Oregel's opposition to the petition was not based exclusively on a waiver claim; he also argued the agreement was unconscionable and unenforceable. Judge Flinn made no finding on the validity of the arbitration agreement, ruling only on the issue of waiver. Like Judge Flinn, we do not address the validity of the agreement because even assuming a valid arbitration agreement, we conclude that Oregel satisfied his burden of establishing waiver.

Turning to the six factors enumerated in *St. Agnes*, one factor—the fourth one—is clearly inapplicable here, as PacPizza did not file a cross-complaint. The five remaining factors all support a waiver finding.

In the 17 months between Oregel's initiation of it class action and PacPizza's assertion of the arbitration agreement, PacPizza engaged in substantial conduct inconsistent with its claimed right to arbitrate. An agreement to arbitrate is an affirmative defense to claims asserted in a lawsuit. (*Ross v. Blanchard* (1967) 251 Cal.App.2d 739, 742.) Despite this, PacPizza filed *two* answers in which it failed to assert the existence of an arbitration agreement as an affirmative defense. (See *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 558 (*Guess?*) ["At a minimum, the failure to plead arbitration as an affirmative defense is an act inconsistent with the later assertion of a right to arbitrate."].) Early in the litigation, PacPizza paid jury fees and demanded a jury trial, which Judge Flinn rightly found "would lead any Plaintiff to believe that he or she had to fully prepare for a full trial." PacPizza objects that it was obligated to pay jury fees before the first case management conference, lest it waive its right to a jury. (Code Civ.

14

Proc., § 631.) It certainly would not have been imprudent for PacPizza to preserve its right to a jury trial in the event its petition proved unsuccessful, *had it done so while making known its intent to seek arbitration*. It was the act of preserving its jury rights while remaining silent on the arbitration agreement that was inconsistent with a right to arbitrate.

PacPizza also attended two case management conferences. At the second, the court established a schedule for the completion of discovery and Oregel's filing of his class certification motion. At both conferences, PacPizza was silent about its intent to arbitrate Oregel's claims. It later stipulated to a modification of that schedule, again maintaining its silence on arbitration.

Beyond all that, PacPizza acted inconsistently with its purported right to arbitrate by actively participating in discovery pertaining to Oregel's class claims. Not only did it respond to Oregel's discovery, but it also propounded its own discovery requests, many of which sought information regarding Oregel's class allegations. PacPizza produced multiple deponents who were questioned on class issues, and it also deposed Oregel and 25 putative class members. While conducting class discovery, never once did PacPizza object that the discovery was improper because it intended to seek arbitration of Oregel's claims.

It is also significant that in its November 6, 2012 responses to Oregel's special interrogatories, PacPizza represented that there existed a valid arbitration agreement between the parties, attaching Oregel's job application to its responses. But PacPizza did not then seek enforcement of that agreement. Rather, a full year went by—during which time PacPizza participated in class discovery—before it demanded that Oregel submit his claims to arbitration.

Despite of all this, PacPizza disputes it acted inconsistently with its right to arbitrate Oregel's claims. This is so, it contends, because it believed it would have been futile to seek enforcement of the arbitration agreement given the state of the law at the time. PacPizza is correct that a court may find a party has not acted inconsistently with its right to arbitrate if the party delayed seeking to enforce an arbitration agreement

15

during a time when that agreement would have been considered unenforceable under existing law. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 376 (*Iskanian*).) PacPizza is incorrect, however, that the futility rule had any applicability here.

By way of background, in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 162–163, the California Supreme Court held that a class action waiver in a consumer arbitration agreement was unconscionable, and thus unenforceable, where the "disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money . . . ." This was followed two years later by its opinion in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*), in which it extended a similar rationale to a class action waiver in an employment arbitration agreement.

In *AT&T Mobility v. Concepcion* (2011) 563 U.S. __ [131 S.Ct. 1740] (*Concepcion*), the United States Supreme Court abrogated the rule established in *Discover Bank*, holding that the Federal Arbitration Act (FAA) preempts state laws that interfere with the fundamental attributes of arbitration. (*Concepcion, supra,* at p. 1748.) While *Concepcion* expressly overruled *Discover Bank*, it made no mention of *Gentry*. (*Concepcion, supra,* at p. 1753.)

In June 2014, the California Supreme Court decided *Iskanian, supra,* 59 Cal.4th 348, which, like *Gentry*, involved an employment arbitration agreement that contained a class action, as well as representative action waiver. The Court held that *Concepcion* abrogated *Gentry* and that the class action waiver was valid. (*Id.* at p. 364.) It also held that an employer cannot compel waiver of PAGA claims because a PAGA claim in the employment context is a dispute between the state and the employer and thus falls outside the FAA's coverage. (*Id.* at pp. 386–387.)

Against this background, PacPizza claims that after *Concepcion* but before *Iskanian,* "there was uncertainty in the law regarding whether a court would enforce the [arbitration agreement in Oregel's job application] and order individual arbitration of

16

[his] wage and hour claims . . . ." PacPizza reasons that because *Concepcion* expressly overruled *Discover Bank* but did not specifically address *Gentry*, *Concepcion* "did not provide desired clarity to California employers with respect to employment arbitration agreements. Instead, California had to wait for the June 2014 California Supreme Court ruling in *Iskanian* for that clarification." PacPizza's theory is fatally flawed, however, for one simple reason: the line of cases on which it relies (e.g., *Discover Bank*, *Gentry*, *Concepcion*, and *Iskanian*) all involved the enforceability of arbitration agreements containing express class action waivers. The arbitration provision in Oregel's job application did not contain a class action waiver. Thus, *Concepcion* was irrelevant to the arbitration agreement at issue here, and the California Supreme Court's decision in *Iskanian*—whether an affirmance or reversal—could have no bearing on the enforceability of that agreement.

PacPizza seeks support from multiple cases in which the petitioner prevailed on a futility claim. None of those cases avails PacPizza, however, because in those cases, the state of the law was such that the arbitration agreements were in fact unenforceable. (See, e.g., *Fisher v. A.G. Becker Paribas Inc.* (9th Cir. 1986) 791 F.2d 691, 695 [defendant had "properly perceived that it was futile to file a motion to compel arbitration until" the United States Supreme Court rejected the intertwining doctrine]; *Letizia v. Prudential Bache Securities, Inc.* (9th Cir. 1986) 802 F.2d 1185, 1186-1187 [same].) Contrast here, where PacPizza attempts to rely on an erroneous interpretation of the law to justify its delay in seeking to enforce an arbitration agreement. This, it cannot do. (See, e.g, *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 447 [rejecting defendant's futility argument because it relied on a clearly erroneous interpretation of *Discover Bank*].)

We also note that Oregel filed his initial complaint in June 2012. PacPizza does not identify any authority decided in the period just prior to its November 2013 petition that changed the governing law and suggested that the arbitration agreement at issue would suddenly be enforceable. PacPizza's only excuse for the suspicious timing of its petition—filed after Oregel filed his class certification motion but before PacPizza's

17

opposition was due—was that it "attempted to wait for the Supreme Court's decision in *Iskanian*, and its anticipated overruling of *Gentry*, [but] once class certification was on the horizon, [PacPizza] could wait no longer." This argument rings hollow for multiple reasons.

First, PacPizza did not petition for arbitration before *any* briefing on class certification had been filed. Rather, it waited until after Oregel filed his moving papers, taking the opportunity to examine his motion and supporting evidence, only to then file the petition before its opposition was due.

Second, if PacPizza had truly believed the arbitration agreement was unenforceable prior to *Iskanian*, as it would have us believe, the looming issue of class certification would not have made any difference: either the state of the law supported enforcement of the agreement or it did not. Instead, the record suggests that PacPizza believed it could keep open the option of arbitrating the dispute while it conducted discovery, but when it appeared the class was going to be certified, it asserted its purported right to arbitrate to preempt certification. As Judge Flinn observed, this was a strategic decision by PacPizza—and one that should not be rewarded.

Third, PacPizza also claims that until the Supreme Court's opinion in *Iskanian* there existed inconsistent Court of Appeal rulings concerning the arbitrability of PAGA claims. In support, it compares *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, claiming it held that PAGA claims are not subject to arbitration, to the Court of Appeal's opinion in *Iskanian v. CLS Transportation Los Angeles, LLC* (2012) 206 Cal.App.4th 949, which held that the FAA applied to PAGA claims. Again, however, this argument fails because, unlike here, the arbitration agreements at issue in both of those cases contained express PAGA representative action waivers. (*Brown v. Ralphs Grocery Co., supra,* 197 Cal.App.4th at p. 495.)

In addition to PacPizza having engaged in conduct inconsistent with arbitration, other *St. Agnes* factors favor a waiver finding. PacPizza substantially invoked the litigation machinery and the parties were well into preparation of the lawsuit before PacPizza attempted to invoke the arbitration provision. While we need not repeat it all

18

here, PacPizza propounded class discovery and engaged in motion practice to obtain discovery from putative class members, allowed Oregel to conduct extensive class discovery and file his class certification motion revealing legal positions and evidence regarding the class members' claims, and deposed 25 absent class members who provided declarations in support of class certification. It agreed to a discovery schedule, including requesting that the trial court set a deadline for Oregel's class certification motion. In conducting extensive class discovery that went far beyond simply responding to Oregel's discovery requests, PacPizza took advantage of judicial discovery procedures that would not have been available in arbitration. (*St. Agnes, supra,* 31 Cal.4th at pp. 1195–1196.)

PacPizza also delayed for an astonishing *17 months* after Oregel filed his complaint before it sought to enforce the arbitration agreement. It waited a full year after providing discovery responses asserting the existence of the arbitration agreement. " 'A demand for arbitration must not be unreasonably delayed. . . . [A] party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration.' " (*Sobremonte, supra,* 61 Cal.App.4th at p. 992.) Nothing in the record explains PacPizza's delay other than its misplaced claim, rejected above, that the law as to the enforceability of the arbitration agreement was unsettled and its failed tactical decision to conduct class discovery while sitting on the agreement.

The final factor identified in *St. Agnes*—whether PacPizza's delay " ' 'affected, misled, or prejudiced" ' " Oregel—is significant to our analysis, as mere participation in litigation and discovery without prejudice does not compel a finding of waiver. (*St. Agnes, supra,* 31 Cal.4th at p. 1203; *Sobremonte, supra,* 61 Cal.App.4th at p. 995.) PacPizza contends Oregel did not establish prejudice because prejudice cannot be found where the party opposing arbitration "shows only that it incurred court costs and legal fees through discovery, motion practice, and other litigation activities."[4] And, it submits,

_____

[4] PacPizza goes so far as to claim Judge Flinn did not find prejudice. This claim is patently false. When PacPizza's counsel inquired at the hearing whether Judge Flinn was finding that Oregel had suffered prejudice, the judge responded, "Well, yes," going on to

19

Oregel only claimed prejudice "because of months of litigation, spending 1,300 attorney hours ($500,000 in fees) in discovery and in taking and defending depositions resulting in $19,900 in out-of-pocket expenses . . . ." It has indeed been said that "courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses." (*St. Agnes, supra,* 31 Cal.4th at p. 1203.) Here, however, Oregel suffered prejudice far beyond merely incurring legal fees and costs.

Prejudice will be found where the "petitioning party's conduct has substantially undermined [the] important public policy [of arbitration as a speedy and relatively inexpensive means of dispute resolution] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*St. Agnes, supra,* 31 Cal.4th at p. 1204; see also *Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at p. 452 [prejudice may be found where the party demonstrates it " 'has been substantially deprived of the advantages of arbitration as a " ' "speedy and relatively inexpensive" ' " means of dispute resolution.' "]; *Burton v. Cruise* (2010) 190 Cal.App.4th 939, 943 ["a petitioning party's conduct in stretching out the litigation process itself may cause prejudice by depriving the other party of the advantages of arbitration as an 'expedient, efficient and cost-effective method to resolve disputes' "].) PacPizza delayed seeking arbitration for 17 months while the parties engaged in extensive discovery, the majority of which went to Oregel's class allegations and would

cite the cost to Oregel, the fact that PacPizza used the litigation to gain discovery pertaining to class members' claims that it could not have obtained in individual arbitration, and "more." And the order denying PacPizza's petition stated, "Defendant fully overlooks the extensive prejudice to the Plaintiff in having to do class certification discovery and prepare an extensive motion for certification, both of which would not play any part in an arbitration proceeding," and "Defendant's conduct has also prejudiced Plaintiff due to the expenditure of time and expense that could have been avoided if Defendant had filed its petition to compel individual arbitration early in the litigation. Any potential cost-saving or time-saving benefits of arbitration have been lost due to Defendant's delay that forced Plaintiff to fully work up the case to prepare it for class certification."

have no bearing Oregel's claims in an arbitration. There can be no doubt that this delay deprived Oregel of the advantages of arbitration.

Additionally, the expenditure of time and money *are* relevant to the prejudice analysis. In *Iskanian, supra,* 59 Cal.4th at pp. 377–378, the Supreme Court endorsed the line of cases that have interpreted *St. Agnes* to allow consideration of the expenditure of time and money in determining prejudice where the delay was unreasonable or unjustified. (See also *Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1048.)

As in those cases, PacPizza's unreasonable and unjustified delay caused Oregel to incur substantial expense. It never suggested that class discovery was unwarranted, instead remaining silent about its intent to pursue arbitration while both it and Oregel conducted extensive discovery on the class allegations. It maintained its silence while Oregel prepared and filed an extensive—and no doubt expensive—class certification motion. Over the 17 months PacPizza delayed seeking arbitration, Oregel's counsel expended over 1,300 hours (corresponding to a lodestar of $500,000 in attorney fees) and $19,900 in costs. The vast majority of these expenditures would have been avoided had PacPizza been forthcoming about its intention to seek arbitration. Its contention that those fees and costs are now irrelevant to the question of prejudice is nothing short of audacious.

In light of the foregoing, we easily conclude PacPizza waived any claimed right to arbitrate. Indeed, many cases have found waiver under less compelling circumstances. (See, e.g., *Bower v. Inter-Con Security Systems, Inc., supra,* 232 Cal.App.4th 1035 at pp. 1039-1041 [10-month delay during which time defendant propounded class discovery]; *Roberts v. El Cajon Motors, Inc.* (2011) 200 Cal.App.4th 832 [five-month delay during which time plaintiff conducted class discovery]; *Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at p. 446 [five-month delay during which time the parties litigated multiple demurrers and motions to strike and engaged in discovery]; *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1451-1452 [six-month delay during which time defendant filed two demurrers, contested discovery requests, and

21

engaged in efforts to schedule discovery]; *Guess?, supra,* 79 Cal.App.4th at pp. 557-558 [four-month delay during which time defendant moved for a stay, objected to written discovery, and participated in third-party depositions]; *Sobremonte, supra,* 61 Cal.App.4th at pp. 993-995 [10-month delay during which time defendant filed two demurrers, a cross-complaint, and motion to transfer case to municipal court, participated in five hearings, and engaged in extensive discovery].)

### PacPizza's Remaining Arguments Are Moot

PacPizza additionally argues that, one, it was improper for Judge Flinn to "pocket" the order denying its petition and, two, Judge Flinn erred in denying its request to stay the action pending decision on the petition. Our conclusion that the petition was properly denied renders these contentions moot.

### DISPOSITION

We close by quoting with approval the Fourth District's observation in *Adolph v. Coastal Auto Sales, Inc., supra,* 184 Cal.App.4th at p. 1452, in which it affirmed denial of a petition to compel arbitration on waiver grounds: "We are loathe to condone conduct by which a defendant repeatedly uses the court proceedings for its own purposes . . . , all the while not breathing a word about the existence of an arbitration agreement, or a desire to pursue arbitration . . . . We note that ' "the 'bad faith' or 'willful misconduct' of a party may constitute a waiver and thus justify a refusal to compel arbitration." ' [Citations.] Although the trial court made no express finding of bad faith, the tone of its ruling is suggestive of such a finding and, had it been made, sufficient evidence would have supported the finding. True, California has a strong public policy in favor of arbitration. But that public policy is founded upon the notion that arbitration is a ' " 'speedy and relatively inexpensive means of dispute resolution.' " ' [Citation.] That goal was frustrated by defendant's conduct." Likewise here.

The order denying PacPizza's petition to compel arbitration is affirmed. Oregel shall recover his costs on appeal.

_____
Richman, J.

We concur:


_____
Kline, P. J.


_____
Stewart, J.

Filed 6/1/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JULIO OREGEL,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PACPIZZA, LLC,<br><br>    Defendant and Appellant. | A141947<br><br> (Contra Costa County<br>Super. Ct. No. MSC12-01454)<br><br>**ORDER CERTIFYING OPINION<br>FOR PUBLICATION** |

THE COURT:

The opinion in the above-entitled matted filed on May 1, 2015, was not certified for publication in the Official Reports. For good cause, the requests for publication are granted.

Pursuant to California Rules of Court, rules 8.1105 and 8.1120, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports. Listing of counsel for the Official Reports is attached hereto.


Dated: _____          _____

                                                      Acting P. J.

1

Trial Court:                                          Contra Costa Superior Court

Trial Judge:                                        Honorable David Bernard Flinn

Attorney for Plaintiff and Respondent:       Keller Grover, Eric Andrew Grover; Steven Lee Miller; Law Offices of Ellen Lake, Ellen Lake

Attorneys for Defendant and Appellant:      Burnham Brown, Michael Robert Bodzin

2