Filed 7/5/23  Quintero v. Apria Healthcare CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ALVARO QUINTERO, | B316463 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV42367) |
| v. | |
| APRIA HEATLHCARE LLC, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Carolyn B. Kuhl, Judge.  Affirmed.

Jackson Lewis, Nathan W. Austin, Dylan B. Carp, Chad D. Bernard, and Jeffrey A. Brand for Defendant and Appellant.

The Hathaway Law Firm, Alejandro P. Gutierrez; Palay Hefelfinger, Daniel J. Palay, and Brian D. Hefelfinger for Plaintiff and Respondent.

On his own behalf and on behalf of a putative class of delivery drivers who were allegedly misclassified as independent contractors, Alvaro Quintero (plaintiff) sued Apria Healthcare LLC (Apria) alleging violations of various wage and hour laws. Ten months after plaintiff filed suit, and shortly after the trial court granted his motion for class certification, Apria moved to compel arbitration. The trial court denied the motion. We consider whether, as the trial court found, Apria waived the prerogative to compel arbitration by taking actions inconsistent with arbitration that prejudiced plaintiff.

## I. BACKGROUND

Apria is a provider of home respiratory services and equipment. It operates 25 branch offices in California from which it picks up and delivers medical equipment. Although Apria employs drivers as members of its work force, it also contracts with other companies to provide courier services on an as-needed basis during periods of high-volume deliveries. One such courier company with whom Apria contracted was Spoke Logistics LLC (Spoke Logistics).

In December 2018, plaintiff agreed to provide courier services for Spoke Logistics. Under the terms of their written transportation services agreement, plaintiff and Spoke Logistics agreed to submit to binding arbitration any "dispute, claim, question, or difference arising out of or relating to" the contract or its breach. The parties' arbitration agreement was silent on the issue of class action litigation. Apria was not a party to or mentioned in the agreement. Although plaintiff signed the agreement, Spoke Logistics never received a copy of the executed agreement and plaintiff did not retain a copy either.

2

### A. Litigation of Plaintiff's Lawsuit Prior to Apria's Motion to Compel Arbitration

Between December 2018 and June 2020, while working for Spoke Logistics, plaintiff provided courier services for three of Apria's California offices.

In November 2020, plaintiff filed a class action complaint against Apria alleging violation of several Labor Code provisions and violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.). A week later, the trial court temporarily stayed all proceedings until after it held an initial status conference. In advance of that conference, the court directed the parties to address several topics in a joint submission, including whether "arbitration is an issue in this case" and, under the heading "POTENTIAL EARLY CRUCIAL MOTIONS," whether either party was considering a motion to compel arbitration.

Prior to the initial status conference, Apria learned from Spoke Logistics that there was an arbitration agreement between the company and each of its couriers. Spoke Logistics further advised that Apria would need to subpoena plaintiff's employment records in order to obtain a copy of the arbitration agreement.

In the joint submission for the initial status conference, Apria advised the court that it understood plaintiff was "subject to an arbitration agreement while employed by his actual employer." Apria, however, did not state it intended to file a motion to compel arbitration; instead, the parties advised the trial court that they were "unaware" of any arbitration agreements applicable to Apria. The status conference was held in February 2021, and the trial court lifted its previously entered

3

stay and set a deadline in September by which any class certification motion would need to be filed.

Following the status conference, plaintiff filed a first amended complaint adding a cause of action for civil penalties pursuant to the Private Attorneys General Act (Lab. Code, § 2698, et seq.). Apria answered the amended pleading by generally denying the allegations and asserting 42 separate affirmative defenses, none of which raised the arbitrability of plaintiff's claims.

Plaintiff moved for judgment on the pleadings with respect to most of Apria's affirmative defenses. After Apria voluntarily withdrew 22 defenses, the trial court granted the motion with respect to eight defenses and ruled that eight others were not "proper" affirmative defenses. Among the four remaining defenses was Apria's second affirmative defense, which asserted it was not plaintiff's or the putative class's employer and, as such, did not control their wages, hours, or working conditions.

As they litigated Apria's affirmative defenses, the parties also met and conferred on the timing of a class certification motion. While plaintiff desired to bring a motion well in advance of the deadline set by the court, Apria urged delay as it "intend[ed] to file cross complaints against third parties" because, among other things, it was not plaintiff's or the putative class's employer.

Not long thereafter, in May 2021, plaintiff moved for class certification and, two months later, for summary adjudication or, in the alternative, judgment on the pleadings with respect to

4

Apria's second affirmative defense. Apria opposed both motions.[1] The appellate record indicates the motions and the oppositions thereto were predicated on significant discovery between the parties that had taken place, including the depositions of plaintiff and of Apria's person most knowledgeable.

On September 14, 2021, the trial court granted plaintiff's class certification motion. The court rejected Apria's argument that certification would be contrary to the interests of those class members who agreed to submit their claims to binding arbitration.

### B. *Apria Moves to Compel Arbitration*

Apria propounded discovery on plaintiff and several third parties, including Spoke Logistics. Plaintiff was asked to respond to one set of form interrogatories, a request for the production of documents, and a deposition notice with an accompanying request for documents which largely mirrored the request for production. Although both sets of document demands each contained 97 separate requests, none of the requests expressly sought production of plaintiff's arbitration agreement with Spoke Logistics and only a small number of the requests might be read as impliedly calling for the production of the agreement. In its subpoena to Spoke Logistics, Apria requested the production of

---

[1] Apria filed its opposition to class certification on July 26, 2021, and its opposition to plaintiff's motion for summary adjudication on October 26, 2021. The trial court was unable to make a summary adjudication ruling because further proceedings were stayed when Apria appealed the denial of a motion to compel arbitration that we soon discuss in more detail.

19 different categories of documents, including one that expressly sought the arbitration agreement with plaintiff and two others that requested documents provided by Spoke Logistics to plaintiff or documents signed by plaintiff.

In June 2021, Apria advised plaintiff that although it was not yet in possession of a copy of an arbitration agreement plaintiff signed, it had received "verbal confirmation" from Spoke Logistics that such an agreement existed and that plaintiff was in possession of a copy of the agreement. In view of this information, Apria formally demanded plaintiff submit to binding arbitration. Plaintiff rejected the demand and asserted Apria had waived its right to compel arbitration through delay— emphasizing Apria had been told by the trial court four months earlier at the initial status conference that if it was considering a motion to compel arbitration it needed to do so "right away."

In advance of his deposition, plaintiff produced an unsigned copy of the arbitration agreement. At his deposition on July 1, 2021, plaintiff confirmed he had signed the agreement when he began work for Spoke Logistics.

Two weeks later, at an informal discovery conference, the trial court advised Apria it could bring a motion to compel arbitration without any additional pre-motion conferences. On September 21, 2021, one week after the trial court granted plaintiff's class certification motion and more than two and a half months after plaintiff's deposition, Apria moved to compel arbitration.[2]

---

[2]     At no time prior to or after filing its motion to compel arbitration did Apria seek a stay of all other proceedings in the case or request leave to amend its answer to include an affirmative defense based on a right to arbitration.

Even though it was not a party to the arbitration agreement, Apria maintained it had a right to compel arbitration because plaintiff's claims were "absolutely intertwined" with plaintiff's relationship with Spoke Logistics. Apria also contended that since the parties to the arbitration agreement did not expressly agree to class arbitration, the recently certified class claims should be dismissed. In addition, Apria argued it had not waived its right to compel arbitration because it did not have knowledge of an enforceable arbitration agreement until after plaintiff's deposition and because it had not taken any actions inconsistent with its right to arbitrate. Without any elaboration, Apria stated it moved to compel arbitration "as soon as practicable" after learning plaintiff had signed the arbitration agreement with Spoke Logistics.

Plaintiff opposed the motion to compel arbitration. Among other things, plaintiff argued Apria waived its right to arbitration by failing to act in a timely manner despite knowing of an arbitration agreement since the case's outset. Plaintiff argued he was prejudiced by Apria's delay, as his attorneys had expended considerable time and resources on matters that would not have been necessary if the action had been timely ordered to arbitration.[3]

In reply, Apria sought to justify the "short" two-and-a-half-month period between when plaintiff admitted he signed an arbitration agreement and when it filed its motion to compel

---

[3]     One of plaintiff's lead attorneys declared that he alone spent 139 hours in connection with the motions for judgment on the pleadings, class certification, and summary adjudication; the fees for his work on those motions exceeded $111,000.

arbitration as necessary. Apria explained it "wanted to ensure it had a viable motion" because counsel for plaintiff had threatened to seek sanctions if a motion to compel arbitration was filed. Apria also argued plaintiff was partially responsible for the delay by failing to produce the arbitration agreement voluntarily in the wake of Apria's disclosure at the time of the initial status conference of a potential arbitration agreement between plaintiff and Spoke Logistics.

C. *The Trial Court Finds Apria Waived Its Right to Compel Arbitration*

In October 2021, the trial court held a hearing on the motion to compel arbitration. At the court's suggestion, the parties focused their arguments on the issue of waiver.

As it had in its moving and reply papers, Apria argued it did not waive its prerogative to compel arbitration because it lacked conclusive knowledge of the arbitration agreement until after plaintiff's deposition and it used the following two and a half months to perform "a lot" of research and analysis. Plaintiff focused his argument on Apria's twin failures to act diligently: first, instead of promptly seeking discovery about the arbitration agreement from plaintiff and nonparty Spoke Logistics as soon as the temporary stay at the beginning of the case was lifted, Apria waited four months to do so; and second, instead of seeking leave to bring an immediate motion to compel following plaintiff's deposition and a stay of all other pending matters, such as the class certification motion, Apria waited almost three more months and until after the motion for class certification was decided before filing its motion.

8

The trial court took the issue under submission and subsequently issued a ruling denying the motion to compel arbitration. The court found that through its actions and inactions, Apria waived its right to compel arbitration. In reaching this conclusion, the trial court specifically relied on: Apria's failure to assert an affirmative defense based on the arbitration agreement; Apria's failure to promptly request the arbitration agreement in discovery from either plaintiff or Spoke Logistics; Apria's election to propound broad merits-related discovery from plaintiff and Spoke Logistics; Apria's decision to litigate the merits of certain issues, including affirmative defenses and class certification, instead of seeking a stay until after an arbitration demand could be adjudicated; and Apria's decision to wait nearly three months from plaintiff's deposition to file its motion to compel. The court found that Apria's decision to delay its motion to compel arbitration until after the court certified the class "strongly suggests [Apria] intended to utilize this forum to prevail on important merits determinations without having to resort to arbitration." In other words, the court found "'there is good reason to suspect that [Apria] made a strategic decision to delay its motion to compel arbitration to give itself an[ ] opportunity to win the case by defeating the class.'" The trial court further found plaintiff was prejudiced by Apria's actions and inaction because he was denied the advantages of arbitration as an expedient, efficient, and cost-effective method of resolving disputes and potentially incurred more than $100,000 in attorney fees that could have been saved had Apria moved to compel arbitration earlier.

## II. DISCUSSION

As we first summarize and then explain, the trial court was correct: on this record, Apria waived its prerogative to compel arbitration by acting in a manner inconsistent with arbitration—to plaintiff's detriment. Despite knowing of the arbitration agreement's existence from the case's earliest days and knowing that a copy of it could only be obtained through discovery, Apria elected not to include arbitration as an affirmative defense in its answer or promptly propound discovery seeking a copy of the agreement. Then, even after obtaining a copy of the agreement and an admission that plaintiff signed it, Apria delayed further: it waited months to bring a motion to compel arbitration—until after the court's adverse class certification ruling—despite being given permission by the court to bring an immediate motion. It is also obvious on this record that Apria's knowing delays prejudiced plaintiff: but for Apria's delay, plaintiff would not have brought three substantive and expensive motions.

Code of Civil Procedure section 1281.2 provides that, upon petition by a party to an arbitration agreement, a court shall order arbitration "if it determines that an agreement to arbitrate the controversy exists," unless it determines that "(a) [t]he right to compel arbitration has been waived by the petitioner . . . ." Although "no single test delineates the nature of the conduct that will constitute a waiver of arbitration," our Supreme Court has identified various factors that are "relevant and properly considered in assessing waiver claims." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195-1196 (*St. Agnes*).) Those factors are: "'"(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the

10

parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party.'" [Citations.]" (*Id.* at 1196; accord, *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 375 (*Iskanian*).) "No one of these factors predominates and each case must be examined in context." (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 444 (*Lewis*).)

On appeal, the question of whether a party has waived the right to compel arbitration is generally a question of fact calling for substantial evidence review. (*St. Agnes*, *supra*, 31 Cal.4th at 1196; accord, *Garcia v. Haralambos Beverage Co.* (2021) 59 Cal.App.5th 534, 541-542.) "'When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.' [Citation.]" (*St. Agnes*, *supra*, at 1196; see also *id.* at 1206 [same].) "[W]aivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*Id.* at 1195.)

Here, nearly all of the pertinent *St. Agnes* factors point toward waiver, particularly those that require consideration of actions by Apria that are inconsistent with its right to arbitrate and any resulting prejudice to plaintiff.

From the initial status conference to the day Apria filed its motion to compel arbitration, more than seven months elapsed. Under established case law, this period of delay was more than sufficient to find Apria's conduct unreasonable and hence a waiver of its right to arbitrate. (See, e.g., *Lewis*, *supra*, 205 Cal.App.4th at 446 [the defendant waived its right to arbitrate by waiting nearly five months]; *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 338 [waiver found due to a six and one-half month delay between the filing of the lawsuit and the motion to compel arbitration]*; Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1451 [waiver due to a delay of six months between the filing of the lawsuit and the demand for arbitration]; *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 555, 557-558 (*Guess?*) [waiver finding affirmed when less than four months elapsed between the filing of the lawsuit and defendant's motion to compel arbitration].)

*Gloster v. Sonic Automotive, Inc.* (2014) 226 CalApp.4th 438 (*Gloster*), and *Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651 (*Khalatian*), cases upon which Apria relies, are not to the contrary. The defendants in those cases did not attempt to secure a litigation advantage before bringing a motion to compel arbitration. (*Gloster*, *supra*, at 449 [delay alone was insufficient to find wavier because it was not "unreasonable" for the defendants, who "consistently asserted their intention to arbitrate," to defer a petition to compel while merely awaiting the results of another defendant's demurrer, since a dismissal of that other defendant would simplify the case]; *Khalatian*, *supra*, at 662-663 [reversing denial of motion to compel arbitration because no depositions were taken by defendants, no discovery motions were filed, defendants' demurrer and motion to strike were not

12

adjudicated but taken off calendar, and "there was no evidence that defendants stretched out the litigation process"].)

In addition, despite learning of a potential agreement to arbitrate in the weeks immediately following the filing of plaintiff's initial complaint, Apria never asserted arbitration as an affirmative defense in its answer to plaintiff's amended pleading. Even after obtaining a copy of the agreement and confirmation that plaintiff had signed it, Apria never sought leave to add arbitration as an affirmative defense. (*Guess?*, *supra*, 79 Cal.App.4th at 557-558 ["At a minimum, the failure to plead arbitration as an affirmative defense is an act inconsistent with the later assertion of a right to arbitrate"].)

Furthermore, even if Apria had timely sought discovery of the arbitration agreement and promptly asserted arbitration as an affirmative defense, substantial evidence of wavier remains. When Apria elected to oppose plaintiff's class certification motion on the merits before filing its motion to compel arbitration, it acted in a manner that was patently inconsistent with its right to arbitrate.

Plaintiff filed its class certification motion on June 4, 2021. Several weeks later and before its opposition to class certification was due, Apria received an unsigned copy of the arbitration agreement and plaintiff's confirmation at his deposition that he had signed the agreement. Instead of asking the trial court in the immediate wake of plaintiff's July 1 deposition to take the class certification motion off calendar until after a motion to compel arbitration could be brought and heard, Apria elected on July 26 to oppose class certification on the merits, and then elected further to wait for a ruling on the class certification motion before moving to compel arbitration. Only after that

13

ruling went against Apria did the company finally seek to compel arbitration. Similarly deliberate decisions by other class action defendants to delay bringing a motion to compel arbitration in order to secure a litigation advantage have been found to constitute a waiver of the right to arbitrate. (*Sprunk v. Prisma LLC* (2017) 14 Cal.App.5th 785, 799 [waiver where the defendant made a "strategic decision" to delay moving to compel arbitration until after a ruling on class certification because "[s]uch a strategic use of the judicial forum is inconsistent with an arbitration right"]; *Oregel v. PacPizza, LLC* (2015) 237 Cal.App.4th 342, 358-359 [waiver finding where defendant's motion to compel arbitration was not filed until after it appeared plaintiff's class certification motion would be granted]; *Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1049 ["[o]ne can infer that [defendant] chose to conduct discovery, delay arbitration, and seek a class-wide settlement [before plaintiff sought to expand the class] because it saw an advantage in pursuing that course of action in the judicial forum"].)

The prejudice to plaintiff additionally supports the trial court's finding of waiver. Where there has been "substantial expense and delay . . . caused by the *unreasonable* or *unjustified* conduct of the party seeking arbitration" courts will find prejudice. (*Iskanian*, *supra*, 59 Cal.4th at 377.) As mentioned already, Apria unreasonably delayed discovery of the arbitration agreement and then unjustifiably delayed in bringing its motion to compel arbitration until after its opposition to class certification had been defeated. It is undisputed that plaintiff and its counsel incurred significant and avoidable expenses as a result of these decisions. In addition to the costs of bringing and litigating the class certification motion, plaintiff also successfully

14

litigated a motion for judgment on Apria's affirmative defenses and prepared and brought a motion for summary adjudication. That is prejudice. (*Bower*, *supra*, 232 Cal.App.4th at 1047 ["[Plaintiff] incurred expenses attributable to [defendant's] discovery and its decision to pursue classwide resolution of the dispute. As a result of [defendant's] actions, [plaintiff] devoted time and energy to activities that had no bearing on an arbitration of [plaintiff's] individual claims"]; see also *id.* at 1046 ["'[e]specially in class actions, the combination of ongoing litigation and discovery with delay in seeking arbitration can result in prejudice'"].) The prejudice is also compounded by the lost opportunity costs had arbitration been sought quickly. (See, e.g., *Iskanian*, *supra*, at 377 ["'[A] petitioning party's conduct in stretching out the litigation process itself may cause prejudice by depriving the other party of the advantages of arbitration as an "expedient, efficient and cost-effective method to resolve disputes"'"; accord, *Guess?*, *supra*, 79 Cal.App.4th at 558 ["Through [defendant's] delay—which it has not even *tried* to explain—[plaintiff] has lost whatever efficiencies that would otherwise have been available to it through arbitration"]; *Bower*, *supra*, at 1046 ["[defendant's] actions substantially impaired [plaintiff's] ability to obtain the cost savings and other benefits associated with arbitration"].)

## DISPOSITION

The judgment is affirmed.  Plaintiff shall recover his costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:



RUBIN, P. J.



MOOR, J.