Filed 3/2/21  McGuire v. 99 Cents Only Stores, LLC CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| GEORGE MCGUIRE, | B301863 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC690901) |
| v. | |
| 99 CENTS ONLY STORES LLC, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Reversed with directions.

Munger, Tolles & Olson, Katherine M. Forster, Elizabeth R. Dyer, and David W. Moreshead for Defendant and Appellant.

Matern Law Group, Matthew J. Matern, Launa Adolph, Kiran Prasad, and Shooka Dadashzadeh for Plaintiff and Respondent.

Defendant and appellant 99 Cents Only Stores LLC (the company) challenges the trial court's determination that the company waived its right to enforce an arbitration agreement between the company and one of its former employees, plaintiff and respondent George McGuire. The company appeals from an order denying, based on such waiver, the company's motion to compel arbitration of McGuire's individual claims in his lawsuit alleging Labor Code violations on both an individual and classwide basis, as well as pursuant to a PAGA claim.

The company's motion to compel individual arbitration followed closely on the heels of a United States Supreme Court decision, *Lamps Plus, Inc. v. Varela* (2019) ___ U.S. __ [139 S.Ct. 1407, 203 L.Ed.2d 636] (*Lamps Plus*), which case eliminated all risk that the arbitration agreement could be interpreted as a basis for *classwide* arbitration under the Federal Arbitration Act (FAA), an outcome the company has openly sought to avoid. The company and McGuire had litigated the case for 14 months before the company filed its motion, during which time the parties exchanged some classwide discovery.

The trial court erred in concluding that, by litigating the matter during that 14-month period, the company waived its right to seek individual arbitration. Neither the court's factual findings nor the record supports the prejudice required to establish such waiver. First, they do not support that the company's delay was unreasonable and thus prejudicial. The considerable risk of class arbitration prior to *Lamps Plus* provides a reasonable explanation for the timing of the company's motion, whether or not that risk rose to the level of making such a motion futile. Moreover, the trial court did not find, and nothing suggests, that the company sought or gained any improper tactical advantage by waiting to enforce

2

the arbitration agreement.  We disagree with McGuire that the company wanting to avoid class arbitration under an agreement the company viewed as authorizing only individual arbitration constitutes an effort to gain an improper tactical advantage. Nothing prohibits arbitration agreements covering only individual claims, and the company was entitled to pursue an outcome consistent with the company's interpretation of its arbitration agreement with McGuire.

Nor does the exchange of classwide discovery and McGuire's work analyzing class claims support a finding of prejudice. McGuire bore a heavy burden below of proving that these efforts would not have occurred, had the company moved earlier to compel arbitration.  But McGuire failed to provide a record from which the trial court could reasonably infer how much of these efforts, if any, exceeded what he would have done to pursue his PAGA claim—a nonarbitrable representative cause of action based on the exact same alleged conduct and Labor Code violations as McGuire's class claims.  Thus, McGuire's showing below was insufficient as a matter of law to meet his burden of establishing prejudice by the company's delay in pursuing individual arbitration.

We reverse the order to the extent it denies the company's request to compel McGuire's individual claims to arbitration. Upon remand, we will instruct the trial court to issue a new order granting the motion to compel McGuire's individual claims to arbitration and to rule on the company's request to stay all other claims, pending the outcome of arbitration.

# FACTS AND PROCEEDINGS BELOW

### A. *McGuire's Arbitration Agreement with the Company*

The company operates retail stores in several states. In 2010, the company hired McGuire as an at-will employee at one of its stores in California.

At the time it hired McGuire, the company required new employees to enter into an arbitration agreement. The arbitration agreement McGuire entered into (the agreement) provides that "the Company and the undersigned Employee are waiving the right to a jury trial for all employment-related disputes" and that "[b]oth the Company and the Employee shall be precluded from bringing or raising in court or another forum any dispute that was or could have been submitted to binding arbitration." The agreement does not expressly address class actions. It does provide, however, that "[t]he Company and the undersigned Employee hereby agree that any dispute with any party (including the Company's affiliates, successors, predecessors, parents, subsidiaries, divisions, dba's, contractors, employees, officers[,] directors and agents) that may arise from or in connection with Employee's employment with the Company or the termination of Employee's employment with the Company must be submitted for resolution by mandatory, binding arbitration."

Notably for the purposes of this appeal, the agreement further provides that, during arbitration, "[t]he parties will be permitted to conduct discovery as provided by . . . Code of Civil Procedure[ ] [s]ection 1283.05," which in turn grants the parties "the right to take depositions and to obtain discovery regarding the subject matter of the arbitration, and, to that end, to use and exercise all of the same rights, remedies, and procedures, and be

4

subject to all of the same duties, liabilities, and obligations in the arbitration with respect to the subject matter thereof . . . as if the subject matter of the arbitration were pending before a superior court of this state in a civil action other than a limited civil case."[1] (Code Civ. Proc., § 1283.05, subd. (a).)

### B. *McGuire Sues the Company*

In 2018, McGuire filed a lawsuit against the company, both individually and on behalf of those similarly situated, alleging wage and overtime violations under the Labor Code as well as a unlawful business practices claim under Business and Professions Code section 17200.

McGuire later amended his complaint to add a claim under the Private Attorneys General Act (PAGA) (Lab. Code, § 2698 et seq.). The PAGA authorizes aggrieved employees to act as private attorneys general and collect "civil penalties" for Labor Code violations, where the Labor and Workforce Development Agency (LWDA) has been notified and does not itself take action. (See Lab. Code, § 2699, subd. (a).) A PAGA suit is representative in nature, in that the plaintiff is "suing on behalf of *all* affected employees," but " 'a representative action under PAGA is not a class action.' " (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 87.) Rather, a PAGA claim is technically

---

[1] Code of Civil Procedure section 1283.05 does limit the discovery rights available to parties in superior court litigation by requiring that "[d]epositions for discovery shall not be taken unless leave to do so is first granted by the arbitrator or arbitrators." (Code Civ. Proc., § 1283.05, subd. (e).) Given that neither party took any depositions prior to the company's motion to compel arbitration, however, this limitation is not relevant to our analysis.

"an enforcement action between the LWDA and the employer," with the plaintiff acting as a proxy for the government. (*Id.* at p. 86.) For this reason, an arbitration agreement between an employee and employer (to which, of course, the government is not a party) cannot provide a basis for compelling PAGA claims to arbitration under either California law or the FAA. (See *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384 (*Iskanian*) [California state law rule against PAGA waivers does not frustrate FAA goals].)

McGuire's PAGA claim is based on the same Labor Code violations that underlie his class action claims,[2] although the time frame for the PAGA claim spanned one year, rather than the four-year putative class period.

### C. *The Company Initially Declines to Seek Arbitration*

In a joint statement filed in anticipation of the initial status conference, the company informed the court that McGuire "and/or other members of the putative class" had signed agreements to arbitrate, and that the company "may file an early motion in connection with the arbitration issue."

At the initial status conference in April 2018, the company stated that it had located an arbitration agreement with McGuire, but that this agreement was "not one [the company] would seek to enforce here." The company explained that it believed McGuire's

---

[2] The PAGA claim was not based on the Business and Professions Code violation underlying one of McGuire's class claims. However, the exact same conduct that formed the basis for the Labor Code violation class claims also provided the basis for the unlawful business practices class claim under the Business and Professions Code.

6

personnel file might be incomplete; it did not contain the company's updated form arbitration agreement that, per the company, included a class action waiver. The company hoped to learn McGuire had also executed the updated agreement, and explained to the court that if the company was able to locate such an additional arbitration agreement with McGuire, it would "move to compel *individual* arbitration." (Italics added.) The company represented to the court that it would do so, if at all, within 30 days or less.

Ultimately, the company was unable to locate any arbitration agreement with McGuire that contained a class action waiver. The company thus did not initially seek to compel arbitration, and instead answered both the complaint and first amended complaint. In both answers, the company identified the arbitration agreement as an affirmative defense. The company's answers also expressly reserved "[the company's] position that [the] case [wa]s subject to a valid and enforceable arbitration agreement and that th[e] lawsuit ha[d] been filed in violation of that agreement."

### D. *The Company's Explanation for Initially Declining to Pursue Arbitration*

In support of its motion to compel individual arbitration, the company explained to the court below and now repeats on appeal that it chose to answer the complaint, rather than move to compel arbitration at the outset of proceedings, based on concerns regarding the company's ability to compel to arbitration only McGuire's individual claims (and avoid classwide arbitration), given the lack of a class action waiver in the agreement.

At the time the company answered the complaints, neither California nor federal law foreclosed the possibility that a court could compel class arbitration under an arbitration agreement

7

that is ambiguous regarding whether it covers class claims. Although no California state court decision had expressly addressed this issue, the California Supreme Court in *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233 (*Sandquist*) addressed the related issue of "*who decides* whether [an arbitration] agreement permits or prohibits classwide arbitration, a court or the arbitrator." (*Id.* at p. 241.) The Court in *Sandquist* "conclude[d] no universal rule allocates this decision in all cases to either arbitrators or courts. Rather, who decides is in the first instance a matter of agreement, with the parties' agreement subject to interpretation under state contract law." (*Ibid.*) The arbitration agreement at issue in *Sandquist* included a broad description of the scope of the arbitrator's authority, and other features of the agreement suggested questions of arbitrability were for the arbitrator, although these were "by no means conclusive" on the issue. (*Id.* at p. 246.) "In the presence of [such] ambiguity, [the Court] turn[ed] to" "two . . . long-established [state law contract] interpretive principles." (*Id.* at pp. 246–247.) Namely, that "ambiguities in written agreements are to be construed against their drafters" under California law (*id.* at p. 247)—a maxim that " ' "applies with peculiar force in the case of a contract of adhesion" ' " (*id.* at p. 248)—and that "when the allocation of a matter to arbitration or the courts is uncertain, we resolve all doubts in favor of arbitration." (*Id.* at p. 247.) These principles led the Court to conclude that the specific arbitration agreement at issue in *Sandquist* delegated to the arbitrator the task of deciding whether the agreement covered class claims. (*Id.* at pp. 246–248.) The Court further concluded that nothing in the FAA "imposes an interpretive presumption that, as a matter of federal law, preempts

8

state law rules of contract interpretation and alters the conclusion state law would otherwise reach here." (*Id.* at pp. 251, 260.)

As for federal court decisions at the time, in *Varela v. Lamps Plus, Inc.* (9th Cir. 2017) 701 Fed. Appx. 670, the Ninth Circuit directly addressed the issue of what is required in order for an arbitration agreement to cover class claims. In so doing, the court applied the same California state law interpretive maxims that the California Supreme Court applied in *Sandquist*, and cited *Sandquist* on these points. (*Id*. at p. 672.) Based thereon, the Ninth Circuit ultimately concluded that, under the FAA, contractual language that is ambiguous as to whether it covers class claims *can* provide the "necessary 'contractual basis' for agreement to class arbitration." (See *id.* at p. 673.)

According to the company, "[b]ased on *Sandquist* and *Varela*, the Company [initially] determined that a motion to compel individual arbitration of McGuire's claims was unlikely to succeed because McGuire's Arbitration Agreement did not include an express class action waiver" and was ambiguous as to whether it permitted class arbitration. Thus, the company feared that, had it earlier sought individual arbitration, it could ultimately have been compelled to classwide arbitration instead, which is a result it wanted to avoid.

### E.    *The Parties Engage in Discovery and Mediation*

In April and May 2018, the parties exchanged written and document discovery requests. McGuire provided written discovery responses, and although he did not produce any documents as part of formal discovery responses, produced 62 documents in connection with subsequent mediation efforts. The company produced a total of approximately 2,155 pages of material through formal discovery

and informal mediation disclosures.  Neither party took any depositions.

Much of these discovery requests and information exchanges were related to class-based claims.  Although both parties responded to many requests largely by objecting, McGuire's counsel represented to the court that he reviewed the approximately 2,000 documents he received from the company through formal discovery "for class litigation purposes."  These formally produced materials did not include a class list or any other information that could have identified any of the members of the putative class.  The company did, however, provide employee time punch data as part of informal subsequent mediation disclosures.

The parties agreed to participate in mediation to be held on June 5, 2019, and to stay any further formal discovery pending the outcome of that mediation.  Because of their forthcoming mediation, the parties also jointly requested and received an extension of the class certification deadline to October 3, 2019.

### F.     *The Company's Motion to Compel Arbitration Following the United States Supreme Court's Reversal in* Lamps Plus

On April 24, 2019, the United States Supreme Court reversed the Ninth Circuit's *Lamps Plus* decision.  (See *Lamps Plus, supra,* ___ U.S. at p. ___ [139 S.Ct. at p. 1415].)  The high court held that an arbitration agreement that is ambiguous as to the availability of class arbitration *cannot* provide the necessary contractual basis for permitting class arbitration under the FAA—even when state law rules of contract interpretation suggest it can.  (*Ibid.*)  In so holding, the Supreme Court rejected the idea that the FAA permits a court to rely on the specific maxims of contract interpretation cited in *Sandquist* and *Varela* as a basis for finding class claims arbitrable

10

under an ambiguous agreement.  It explained:  "The doctrine of contra proferentem [requiring a contract to be interpreted against the drafter] cannot substitute for the requisite affirmative 'contractual basis for concluding that the part[ies] *agreed* to [class arbitration].' "  (*Id.* at p. 1419, italics omitted.)  The Court further explained that "[c]lass arbitration is not only markedly different from the 'traditional individualized arbitration' contemplated by the FAA, it also undermines the most important benefits of that familiar form of arbitration" (*id*. at p. 1415) and the FAA "therefore requires more than ambiguity to ensure that the parties actually agreed to arbitrate on a classwide basis." (*Ibid*.)  The parties do not and cannot dispute that the Supreme Court's *Lamps Plus* decision changed the law regarding what the FAA requires in order to compel arbitration on a classwide basis.

Within two weeks of the Supreme Court's decision, the company informed McGuire it intended to file a motion to compel McGuire's individual claims to arbitration.  The company offered to delay the filing of a motion to compel arbitration pending the outcome of mediation, if McGuire would agree not to argue later that the company had waived its right to seek arbitration.  McGuire did not agree to this.  The mediation on the class claims proceeded as planned, but the parties were unable to reach a resolution.

That same day, the company filed its motion to compel individual arbitration.  The motion argued that it would have been futile for the company to seek to compel individual arbitration prior to the United States Supreme Court's *Lamps Plus* decision, given that the agreement does not contain an express class action waiver.  McGuire opposed the motion, disagreeing with the company's futility arguments and arguing the company's delay in bringing the

11

motion significantly prejudiced McGuire, such that the company had waived its right to arbitration.

### G.  *Hearings and Supplemental Briefing on Arbitration Motion*

The trial court issued a tentative ruling indicating it intended to grant the company's motion.  On July 17, 2019, the trial court held an initial hearing on the motion, at which McGuire informed the court he had incurred substantial costs retaining an expert to analyze putative class member time and pay records.  The trial court ordered supplemental briefing on the issue of prejudice and continued the hearing.

In his supplemental brief and accompanying attorney declaration (the Matern declaration), McGuire identified the fees and costs he had incurred that he argued would have been avoided, had the matter proceeded to individual arbitration from the outset, rather than classwide litigation.  The Matern declaration states that a total of $150,997.50 in legal fees (237.6 attorney hours) were attributable solely to work on classwide claims.  The declaration attributed 98.3 of those 237.6 hours (and approximately $55,000 in fees) to preparing class claim-related discovery responses, such as responses to requests regarding "purported class members," and reviewing the information provided by the company "for class litigation purposes."  The declaration further broke down the amount of legal fees the declarant associated solely with classwide litigation as follows:  11.5 hours ($7,665.00 in fees) "to confer with [an] expert on class-wide issues and to otherwise analyze the class data, as well as in conferring with [an] investigator on class-wide issues to be discussed with the class members in this action"; 14.7 hours ($11,535 in fees) "to strategize regarding class litigation, specifically by preparing for a motion for class certification and

12

strategizing on theories to establish commonality, typicality and adequacy in this action"; 56.8 hours ($45,298.00 in attorney fees) "to prepare for, attend, and otherwise expend efforts on class mediation—a total which would have been significantly reduced had mediation been geared exclusively towards [McGuire's] individual claims" and 56.3 hours, totaling $31,100.00 in fees, "in opposing and otherwise addressing" the motion to compel individual arbitration.

McGuire also identified $13,979.35 in costs spent on expert data analysis of employee data and investigative services to assist with contacting class members. Specifically, the declaration provided that McGuire "incurred costs of approximately $11,416.85 on investigative services, which assisted with [McGuire's] efforts in contacting class members and gathering information that [McGuire] needed from class members in order to prepare for mediation and an eventual motion for class certification," and "incurred approximately $2,562.50 for expert data analysis of the class-wide claims in advance of mediation." It did not identify (nor does the record disclose) which mediation-related fees and costs, if any, were incurred before the company put McGuire on notice of its intent to seek arbitration of McGuire's individual claims.

In terms of the potential overlap between the class claim-related work underlying these fees and costs and work relevant to McGuire's PAGA claim, the declaration stated only that McGuire would not have "incurred all of these costs [and fees] in an exclusively PAGA-representative action, given that the class period exceeds the PAGA period by . . . three . . . years, meaning that there was approximately [four] times as much data to analyze and roughly [four] times as many individuals to contact."

13

In advance of the continued hearing, the trial court issued a tentative ruling denying the company's motion. The tentative ruling included several factual findings to support the court's conclusion that the company's delay in bringing the motion had been unreasonable and had prejudiced McGuire. Specifically, the court found that, despite being aware of the agreement, the company had "delayed for a long period (i.e., 14 months) before seeking to compel arbitration." The court further found that the company thereafter engaged in "extensive class[ ]wide discovery," "a level of discovery not likely to be allowed in arbitration, particularly if [the company] had sought to limit the arbitration to an individual claim," and that McGuire "invested substantial time and money . . . developing information pertaining to the entire class of over 44,700 employee putative members." Considering these findings under the appropriate multi-factor analysis set forth by the California Supreme Court in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1203–1204 (*St. Agnes*), the court concluded the company had waived any right to seek individual arbitration. The court ultimately adopted this tentative ruling as its final ruling on the motion.

Although the court's written decision did not expressly address the company's futility argument, it did note that the company had "changed its position regarding its interest in arbitration only after the [United States] Supreme Court *reduced the hazards of class arbitration* via its decision in [*Lamps Plus*]." At the continued hearing, the court rejected the futility argument, based on the court's view that, under the agreement, the law before *Lamps Plus* did not render class arbitration inevitable. The court further noted that the possibility of an arbitrator, rather than a court, deciding whether class claims are arbitrable under the

14

agreement also did not render a motion for individual arbitration futile.[3]

The company timely appealed the court's denial of its motion to compel individual arbitration.

## DISCUSSION

### A. *Applicable Law and the Company's Arguments*

"[A] petition to compel arbitration will be denied when the right has been waived by the proponent's failure to properly and timely assert it." (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 557 (*Guess*), citing Code Civ. Proc., §§ 1281, 1281.2, subd (a).) The FAA and California state law apply the same standards for determining whether a party has waived the right to seek arbitration. (See *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 444.) Under these standards, waiver is "not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*St. Agnes, supra,* 31 Cal.4th at p. 1195.) The California Supreme Court has suggested a number of nonexclusive factors courts may consider in assessing

---

[3] Both parties, as well as the trial court, appear to assume that the question of whether class arbitration was available under the agreement would most likely be decided by an arbitrator, rather than the court, as the California Supreme Court instructed was necessary on the facts in *Sandquist*. Because who would decide the issue of arbitrability does not affect our analysis on appeal, however, and because the parties do not dispute that McGuire's individual claims are arbitrable, we need not consider who would decide issues of arbitrability under the agreement.

15

whether a party has waived the right to arbitrate.[4]  (*St. Agnes, supra*, at p. 1196.)  Whether it would have been futile for the potentially waiving party to have raised a request for arbitration earlier is "implicit" in that multi-factor analysis.  (*Iskanian, supra*, 59 Cal.4th at p. 376.)

The California Supreme Court has instructed that, in analyzing these factors, " '[t]he presence or absence of prejudice from the litigation of the dispute is *the determinative issue under federal law*.' "  (*St. Agnes, supra,* 31 Cal.4th at p. 1203 (italics added), quoting *Doers v. Golden Gate Bridge, Highway and Transportation District* (1979) 23 Cal.3d 180, 188; see also *Thorup v. Dean Witter Reynolds, Inc.* (1986) 180 Cal.App.3d 228, 237 [to establish an effective waiver under the FAA, "[t]he party opposing arbitration must demonstrate actual prejudice"].)  Likewise, under California law, where, as here, there has been no judicial litigation of the merits of arbitrable issues, "[t]he presence or absence of prejudice from the litigation is a determinative issue."  (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1205 (*Hoover*); *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778,

---

[4] These factors are:  " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' "  (*St. Agnes, supra*, 31 Cal.4th at p. 1196.)

782.) Thus, absent prejudice from a party's delay in seeking to enforce an arbitration agreement, there can be no waiver of the right to arbitrate.

Prejudice sufficient to support an arbitration waiver must be based on more than lengthy delay and/or the opposing party having incurred court costs and legal expenses from continued participation in litigation. (*St Agnes, supra,* 31 Cal.4th at p. 1203; *Iskanian, supra*, 59 Cal.4th at p. 377; *Groom v. Health Net* (2000) 82 Cal.App.4th 1189, 1197 (*Groom*).) Instead, "prejudice typically is found only where the petitioning party has *unreasonably* delayed seeking arbitration or substantially impaired an opponent's ability to use the benefits and efficiencies of arbitration." (*Hoover, supra*, 206 Cal.App.4th at p. 1205 (italics added); *Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1048 (*Bower*) ["[t]he distinction in the case law turns on whether any delay in seeking arbitration is *reasonable*"]; see *St. Agnes, supra*, 31 Cal.4th at pp. 1203–1204; *Groom, supra,* 82 Cal.App.4th at p. 1197.) "For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration" (*St. Agnes, supra*, at p. 1204; see *Hoover, supra*, 206 Cal.App.4th at p. 1205 [prejudice from "extensive discovery that is unavailable in arbitration proceedings"]), or where a party otherwise uses delay in seeking arbitration as a litigation tactic to gain a strategic advantage. (See *Guess, supra*, 79 Cal.App.4th at p. 558 [prejudice from delay in seeking arbitration that led opposing party to "disclose[ ] at least some of its trial tactics . . . more so than would have been required in the arbitral arena" and caused the opposing party to "los[e] whatever efficiencies that would otherwise have been available to it through arbitration"]; *Sprunk v. Prisma LLC*

17

(2017) 14 Cal.App.5th 785, 799 (*Sprunk*) [delay in moving to compel arbitration reflected "strategic use of the judicial forum . . . and support[ed] a waiver finding"].)

The company offers three primary arguments why the court's waiver analysis was erroneous and its ruling on the motion to compel individual arbitration should be reversed. First, the company contends that the court incorrectly rejected—or, in the alternative, did not sufficiently consider—the futility of seeking individual arbitration before *Lamps Plus*. Second, the company contends that the court's factual findings are insufficient as a matter of law to support prejudice. Third, as an alternative, the company challenges the sufficiency of the evidence to support those factual findings.

A trial court's determination of waiver, " ' "if supported by substantial evidence, is binding on an appellate court' " " and "[o]nly ' "in cases where the record before the trial court establishes a lack of waiver as a matter of law, [may] the appellate court . . . reverse a finding of waiver made by the trial court." ' " (*Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1450; see *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211 [reversal of waiver finding appropriate where "the record as a matter of law compels finding nonwaiver"].) Even assuming, without deciding, that the court's express factual findings are supported by substantial evidence, these findings, either alone or combined with other facts supported by substantial evidence in the record, are insufficient as a matter of law to establish the prejudice necessary to support waiver.[5]

---

[5] We thus need not and do not reach the company's arguments challenging the sufficiency of evidence to support the court's findings, or the company's futility arguments as such.

18

**B.** *The Facts Found By the Court Do Not Establish Prejudice*

In response to the company's prejudice arguments, McGuire identifies two factual findings he argues establish that the company's delay was sufficiently prejudicial to support waiver: the delay was "for a long period," and, as a result of it, McGuire provided and analyzed extensive class claim-related information and discovery, something that would not have occurred in individual arbitration (or in subsequent litigation of the nonarbitrable PAGA claims, at least not to as great an extent). McGuire argues this generated unnecessary expense for McGuire and a windfall of information for the company.

**1.** *Reasonableness of delay in light of change in law via* **Lamps Plus**

Under certain circumstances, a delay in seeking arbitration may be so unreasonable that it alone deprives the opposing party of core benefits of arbitration, and thus is sufficiently prejudicial to support waiver. (See *Iskanian, supra*, 59 Cal.4th at pp. 377–378; *Bower, supra,* 232 Cal.App.4th at pp. 1048–1049.) But the length of delay alone cannot establish unreasonableness. (See *Hoover, supra,* 206 Cal.App.4th at p. 1203; see also *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30 [" '[w]hat constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case' "].) Cases deeming a delay sufficiently unreasonable to establish prejudice involved delay for which the party seeking arbitration had no plausible explanation, and/or a record supporting an inference of delay for strategic advantage. (See e.g., *Guess, supra*, 79 Cal.App.4th at p. 558 [noting party seeking arbitration "ha[d] not even *tried* to explain" its failure to

19

do so earlier and to instead seek extensive discovery, which would afford it a strategic advantage]; *Bower, supra*, 232 Cal.App.4th at p. 1049 [party initially declined to seek arbitration "because it saw an advantage in pursuing [discovery and class settlement] in the judicial forum" and "nothing . . . suggest[ed] . . . any change in the law that prompted [the party] to finally pursue arbitration"]; *Sprunk, supra*, 14 Cal.App.5th at p. 798 [discussed *post*].)  Neither is the case here.

a. *A considerable risk of class arbitration under the agreement existed pre-*Lamps Plus

The company has explained that it did not seek to compel individual arbitration for approximately 14 months because it feared that doing so under then-applicable law might have forced the company into unwanted *classwide* arbitration.

The risk of such an outcome was considerable following the California Supreme Court's 2016 decision in *Sandquist*.  Although that case did not deal with the specific issue of class arbitration, it held that, if arbitration agreement language in an employer's contract of adhesion is ambiguous, the concepts of contra proferentem and the FAA's pro-arbitration presumption require that language be interpreted against the drafter (i.e., the employer) and in favor of arbitration.  (See *Sandquist, supra*, 1 Cal.5th at pp. 246–247 ["[i]n the presence of ambiguity, we turn to other principles applicable to the interpretation of arbitration clauses and contracts generally [¶] . . . [¶] [and] [u]ltimately dispositive here are two . . . long-established interpretive principles"].)  Before *Lamps Plus*, had the court (or the arbitrator) determined the language in the agreement here to be ambiguous, *Sandquist* would have required the application of these same interpretive principles, creating a considerable risk that the trial court (or an arbitrator)

20

would have construed the agreement against the company and in favor of arbitration of both individual and class claims. Indeed, in the decision the United States Supreme Court ultimately reversed, the Ninth Circuit Court of Appeals relied on the interpretive principles discussed in *Sandquist* to conclude ambiguous arbitration agreement language sufficient to support classwide arbitration under the FAA. (See *Varela v. Lamps Plus, Inc.*, *supra*, 701 Fed. Appx. at pp. 672–673.)

McGuire cites two Court of Appeal cases in arguing that no such risk existed before *Lamps Plus*. (See *Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal.App.4th 506 (*Kinecta*) & *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115 (*Nelsen*).) These cases pre-date *Sandquist* and are thus of little assistance to McGuire's argument. More fundamentally, these cases merely reflect two Courts of Appeal interpreting language in arbitration agreements different from the language at issue here. (See *Kinecta, supra*, at p. 519 [parties did not agree to classwide arbitration with the language " 'any claim, dispute, and/or controversy that either *I* may have against the Credit Union . . . or the Credit Union may have against *me,* arising from, related to, or having any relationship or connection whatsoever with *my* seeking employment with, employment by, or other association with the Credit Union' "]; *Nelsen, supra*, 207 Cal.App.4th at pp. 1129–1130 [agreement that provided it "only covers claims, disputes, and controversies 'between myself and Legacy Partners,' " did not authorize class arbitration].) That those courts determined the language at issue in those cases was an insufficient contractual basis to support classwide arbitration does not mean the language in the agreement here necessarily is

21

insufficient as well. McGuire is thus incorrect in dismissing the risk of class arbitration pre-*Lamps Plus* based on these cases.

Regardless of whether this risk rose to such a level that it would have rendered a pre-*Lamps Plus* motion to compel individual arbitration futile, the risk was sufficient to justify concerns about an outcome the company viewed as inconsistent with the arbitration agreement it signed. We therefore consider the reasonableness of the company's delay against a backdrop of this risk.

> b. *The company's timing in moving to compel is consistent with changes in the risk of classwide arbitration*

The timing of the company's motion to compel tracks the neutralization of risk that the company might be required to arbitrate class claims. Such timing is thus "consistent with . . . a bona fide desire to await clarification of the law," rather than a prejudicial "strategic decision" to delay. (*Sprunk, supra*, 14 Cal.App.5th at p. 799; see *Oregel v. PacPizza, LLC* (2015) 237 Cal.App.4th 342, 358–359 (*Oregel*).) Namely, in April 2019, *Lamps Plus* rejected the Ninth Circuit's reliance on *Sandquist* for the very interpretative principles noted above and held that the FAA does not permit ambiguous language to support classwide arbitration *under any circumstances*. Less than two weeks later, the company informed McGuire of its intent to seek individual arbitration. The company then filed its motion to compel within several weeks. Thus, the company moved promptly to enforce its arbitration agreement following a change in the law it claims led it not to move earlier.

This distinguishes the company's conduct from that at issue in cases rejecting as disingenuous a delaying party's purported

22

reliance on a change in law.  In *Sprunk*, for example, the party seeking arbitration "waited over a year . . . after the Supreme Court decision that [the party] concede[d] settled the [applicable] law." (See *Sprunk, supra*, 14 Cal.App.5th at p. 798.)  Further, in *Sprunk* and *Oregel*, the timing of the belated motion to compel arbitration aligned with the completion of class certification, creating "good reason to suspect that [the party] made a strategic decision to delay its motion to compel arbitration to give itself another opportunity *to win the case by defeating a class*."  (*Sprunk, supra*, 14 Cal.App.5th at p. 798 (italics added); *Oregel, supra*, 237 Cal.App.4th at pp. 358-359 [rejecting argument that delay based on change in law where "the record suggest[ed] that [the party seeking arbitration] believed it could keep open the option of arbitrating the dispute while it conducted discovery, but when it appeared the class was going to be certified, . . . assert[ ] its purported right to arbitrate to preempt certification"].)  Here, by contrast, the company sought to arbitrate months before the certification issue was even scheduled to be heard, and thus neither tried to obtain (nor did obtain) multiple opportunities to defeat class claims.

The company was entitled to try and enforce the terms of the agreement, which the company interpreted as requiring only individual claim arbitration.  The law permits parties to exclude class claims from the scope of an arbitration agreement (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 352 [holding class action waivers are enforceable under FAA and California rule to the contrary preempted]), and thus, potentially, to pursue individual claim arbitration before any related class claims.  (See Code Civ. Proc., § 1281.4, 3d par. [permitting stay of severable, nonarbitrable claims pending arbitration of arbitrable claims].)  To the extent the company sought or will obtain a strategic advantage from

23

arbitrating only individual claims, but not class claims, this is not improper gamesmanship—it is merely the company enforcing a valid contract.

Nor do the court's findings support some other type of improper motive for or strategic benefit from the company's delay. For example, "there was no evidence that [the company] stretched out the litigation process, . . . or waited until the eve of trial to move to compel arbitration." (*Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, 663 (*Khalatian*), citing *Iskanian, supra*, 59 Cal.4th at p. 377; *Bower, supra*, 232 Cal.App.4th at p. 1045.)

### 2.    *Classwide litigation efforts and classwide discovery*

The trial court found that the parties had engaged in "extensive classwide discovery" and "a level of discovery not likely to be allowed in arbitration," given that the company was seeking to compel arbitration of only McGuire's *individual* claims.  The court further found that McGuire's "counsel [had] invested substantial time and money thereafter developing information pertaining to the entire class of over 44,700 employee putative members."  McGuire argues that these findings reflect the requisite prejudice, because counsel's classwide efforts will be useless in individual arbitration (and largely useless in litigation of the PAGA claim, given the shorter time frame it covers), and because the company secured an unfair advantage by obtaining classwide discovery to which it was not entitled in individual arbitration.

In order for such classwide efforts and discovery to constitute prejudice flowing from the company's delay, it must be true that McGuire would have avoided them, had the company moved earlier to compel individual arbitration.  To determine whether this is the

24

case, we must consider the relevance of those efforts to McGuire's nonarbitrable PAGA claim, which would have remained pending during arbitration, albeit potentially stayed. (See Code Civ. Proc., § 1281.4, 3d par.) McGuire's classwide efforts can only be prejudicial if they would not have been relevant to McGuire's PAGA claim.[6] (See *Gloster v. Sonic Automotive, Inc.* (2014) 226 Cal.App.4th at p. 450 ["[i]n the absence of a demonstration that the discovery would not be useful . . . in pursuing [plaintiff's] claims in arbitration, its expense did not constitute prejudice"].) McGuire bore the "heavy burden" below of establishing this. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195.)

The court did not make any findings regarding the extent of the overlap between McGuire's class claim-related discovery and efforts and discovery and efforts relevant to his PAGA claim. We therefore review the record for substantial evidence to support the finding on this point that is necessarily implied in the court's conclusion that McGuire's classwide efforts constituted prejudice. (See *St. Agnes*, *supra*, 31 Cal.4th at p. 1196.) In so doing, we view the record in the light most favorable to McGuire, and draw

---

[6] In arguing that the classwide efforts and classwide discovery unavailable in arbitration can constitute prejudice, McGuire relies heavily on *Bower*, *supra*, 232 Cal.App.4th 1035. *Bower* is inapposite, because it was decided in 2014, at which time the arbitrability of Bower's PAGA claim on an individual basis was still unclear. (See *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 677.) Under those circumstances, it is possible discovery regarding a broader group of employees could only be obtained by delaying arbitration, because the representative PAGA claims may not have continued in court after the arbitration agreement was enforced. Moreover, *Bower* does not discuss the effect of the plaintiff's PAGA claim in its prejudice analysis.

every reasonable inference in his favor. (See *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.) For reasons we discuss further below, we conclude that the record contains no evidence from which the trial court could reasonably infer the extent to which McGuire's classwide efforts would not have been useful to McGuire's nonarbitrable PAGA claim. There is thus no basis for the court to reasonably infer that the classwide efforts McGuire claims constitute prejudice would have been avoided, had the company moved earlier to compel, or that these efforts would be wasted, were the trial court to grant the motion for individual claim arbitration. Thus, as a matter of law, McGuire did not carry his burden below.

The parties do not dispute that the PAGA claim is based on the same alleged conduct and Labor Code violations as the class claims. Thus, the *merits* of the PAGA claim and class claims necessarily overlap. Accordingly, discovery and other efforts McGuire identifies regarding the merits of the class claims are relevant to the PAGA claim in any event.

The Matern declaration is the only evidence in the record bearing on the extent to which the work McGuire performed on classwide claims was work McGuire would need to perform in any event in connection with the PAGA claim, given their overlapping merits. But the Matern declaration speaks to the work performed in litigation that would not have been necessary for McGuire *to arbitrate his individual claims*. This does not address whether or to what extent the work performed in litigation would have been necessary for McGuire *to litigate his PAGA claim*. The vast majority of the declaration does not distinguish between class and PAGA claims. For example, immediately after stating that "my office did not include [in legal fee estimates] time which [McGuire's

26

counsel] would have spent to litigate the case regardless of the matter being compelled to individual arbitration," the Matern declaration explains that "we only considered time spent after [the company] filed its [a]nswer on April 17, 2018, as it is common practice for a motion to compel arbitration to be filed in place of an answer, *and we therefore reasonably inferred that their time was dedicated to class litigation from that point forward.*" (Italics added.) But "classwide litigation" was only part of what was before the court after that point—the PAGA claim remained pending as well.

The only portion of the declaration that addresses the extent to which classwide litigation work would not also support McGuire's litigation of his PAGA claims is conjecture by the declarant. Specifically, the declarant argues that, because the class claims cover a time period three years longer than the PAGA claim, they involved four times as much data and four times as many employees as the PAGA claim (and correspondingly more work). As a preliminary matter, the number of years surveyed does not bear a linear relationship to the amount of discovery relevant to the completely overlapping merits of the class and PAGA claims. Moreover, the declaration's conjecture in this regard is built on the faulty assumption that a time period four times as long corresponds to a group of employees four times as big. Yet an employee might have been employed by the company *both* during the one-year PAGA period *and* the remaining three years of the class period. Although we recognize that there will be some turnover in employees over the course of a four-year period, the one-to-one correlation between time and number of employees the declaration assumes would require that in each of the three years unique to the putative class period, the company hired as many employees

27

as it had working for it during the year covered by the PAGA claim. This is on its face speculative and, in any event, unsupported by any evidence in the record.

In addition, the declaration ignores that all "aggrieved employees" during the one-year PAGA period are necessarily also putative class members (even though not all putative class members are necessarily "aggrieved employees" for the purposes of the PAGA claim). Thus, even if we were to accept the Matern declaration's conjecture that the class claims involve four times as many employees as the PAGA claim, without additional information about *which* employees were the subject of McGuire's legal, expert, and investigative efforts, we have no basis for determining whether that work involved employees who are *both* putative class members *and* "aggrieved employees" during the one-year PAGA claim period. To the extent they are, such work would serve both class claims and the PAGA claim. Similarly, without information about which data McGuire analyzed, the fact that a four-year period generates more data than a one-year period also is not a basis for assuming McGuire performed more work than would be required for his PAGA claim. Thus, the length of the putative class period is not a basis from which the court could reasonably infer what portion of McGuire's work on class claims would not also support his PAGA claim, because such an inference relies on both the false premise that a longer period necessarily involves more employees, and the unsubstantiated premise that the work performed related to a time period beyond the PAGA period and/or employees not covered by the PAGA period.

McGuire next argues that McGuire's counsel analyzed class *certification* issues in connection with mediation and in anticipation of the class certification motion, and that these issues have no

bearing on a PAGA claim. But there exists no inherent or clear dividing line between analysis of class certification issues and analysis of the merits of an underlying class claim; often the merits and class certification issues are significantly intertwined. (See, e.g., *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1023 [" 'issues affecting the merits of a case may be enmeshed with class action requirements' "]; see also *Wal–Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 351 [analysis of a class certification "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim"].) In addition, some aspects of the class certification process involve issues that must be litigated to support the PAGA claim as well, such as the commonality of the alleged violations to all aggrieved employees. (See, e.g., *Amiri v. Cox Communications California, LLC* (C.D.Cal. 2017) 272 F.Supp.3d 1187, 1194 ["some district courts strike PAGA representative claims where establishing liability based on Labor Code violations would be unmanageable due to the individualized assessments required to prove violations based on the plaintiff's allegations and the defendant's evidence of the necessary inquiries"].) McGuire has not provided evidence from which the court could reasonably infer McGuire's 14.7 hours of legal work related to an anticipated motion for class certification did not overlap with the merits issues common to the class and PAGA claims to a sufficient extent to establish prejudice.

" '[N]o waiver of the right to arbitrate can occur from conducting discovery on non-arbitrable claims.' " (*Rush v. Oppenheimer & Co.* (2d Cir. 1985) 779 F.2d 885, 889 [plaintiff "unable to point to any specific discovery . . . that was not relevant to the [nonarbitrable] . . . claims, [and] he [thus] cannot establish that prejudice in the arbitration would result from that discovery"];

29

see *Gloster, supra,* 226 Cal.App.4th at p. 450.)  The same is true for legal fees and costs incurred working on nonarbitrable claims. Because the record does not contain any basis on which the court could have reasonably inferred that McGuire's class-claim-related discovery and efforts were irrelevant to his nonarbitrable PAGA claim, he has failed to provide sufficient evidence to support a finding that these efforts were a waste of time or resources, or that the company obtained any discovery it otherwise could not have obtained, absent its delay.  Such classwide discovery and efforts cannot, therefore, support a finding of prejudice.

### 3.     *The timing of classwide discovery*

Of course, the company's delay in moving to compel arbitration may have affected *when* the parties exchanged classwide discovery. Namely, had the company moved to compel arbitration earlier, the PAGA claim potentially could have been stayed, in which case McGuire would have engaged in PAGA-related discovery after individual arbitration.  By contrast, were the court to permit individual arbitration to proceed at this point, McGuire would have provided this discovery before individual arbitration.  Such a change in timing could support a finding of prejudice if the discovery McGuire provided revealed strategic information regarding McGuire's individual claims, such that it would prejudice McGuire in individual arbitration to have revealed the information in advance.  (See *Guess, supra,* 79 Cal.App.4th at p. 558 [finding waiver where, "[t]hrough its use of the discovery process," the party opposing arbitration "disclosed at least some of its trial tactics"]; see *Groom, supra,* 82 Cal.App.4th at p. 1196 [discussing cases in which a party "by engaging in discovery, the defendant learned all the details of the plaintiff's case before demanding arbitration" causing sufficient prejudice to support

30

waiver] (italics omitted.) Neither the court's factual findings, nor the record, support that this is the case. Nor does McGuire's briefing explain how the classwide discovery would have telescoped trial strategy relevant to arbitration of plaintiff's individual claims. In any case, to the extent such discovery was relevant to McGuire's individual claims, the company could have obtained the same information via the broad discovery provision in the arbitration agreement. Nor could this change in timing prejudice McGuire in the eventual PAGA litigation, as in either scenario, McGuire would have had to provide PAGA-related discovery before trial on the PAGA claim.[7]

We therefore conclude that the court's factual findings and the record more broadly are insufficient as a matter of law to establish waiver. We reverse the trial court's order to the extent it denies the company's request to compel McGuire's individual claims to arbitration.

---

[7] As McGuire's counsel suggested during oral argument before this court, it is possible that McGuire's mediation brief revealed McGuire's trial tactics for PAGA litigation that the company could not have obtained through normal discovery, and thus that the company could not have learned before trial, absent the company's delay in seeking arbitration. But the record does not indicate whether the parties exchanged mediation briefs before or after the company put McGuire on notice of its intent to compel arbitration approximately a month before the mediation took place. If McGuire chose to provide the company such a brief after learning of the company's plan to seek arbitration—instead of, for example, offering a confidential brief to the mediator, or canceling the mediation altogether—he cannot blame this choice on the company's delay in seeking arbitration. The record thus does not contain sufficient information to support the argument that the mediation brief facilitated a prejudicial disclosure of trial tactics.

31

The court below has not yet had occasion to consider the other request presented by the company's motion:  that the court stay "the remainder of this case, including [McGuire's] PAGA claim." We express no opinion as to the proper disposition of this request, and instead instruct the trial court, upon remand, to issue a new order addressing it.

## DISPOSITION

The court's order denying the company's motion to compel arbitration is reversed.  Upon remand, the court shall issue a new order granting arbitration of McGuire's individual claims and ruling on the company's request for a stay of all other claims.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


FEDERMAN, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.