Filed 5/9/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| STEPHEN R. HOFER, et al., | B339542 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 23SMCV04868) |
| v. | |
| VICKY BOLADIAN, et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael E. Whitaker, Judge.  Affirmed.

TroyGould, Amy L. Nashon and Jennifer C. Wang for Plaintiffs and Appellants.

Nemecek & Cole, Marshall R. Cole, Mark Schaeffer and Vikram Sohal for Defendants and Respondents.

\* \* \* \* \* \*

Under the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) (the Act),[1] a party with a contractual "right to compel arbitration" of a dispute may "waive[]" that right. (§ 1281.2, subd. (a).) In *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562 (*Quach*), our Supreme Court overruled the arbitration-specific definition of waiver embraced in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187 (*St. Agnes*) in favor of the "generally applicable" definition of waiver. (*Quach*, at p. 578.) *Quach* held that a waiver occurs under the Act if, by clear and convincing evidence, it is shown that a party has "intentionally relinquished or abandoned" its known right to compel arbitration. (*Id.* at pp. 569, 584.) In this case, the litigants seeking to compel arbitration initiated this lawsuit by filing a complaint in court and, while in the judicial forum, sought two forms of preliminary injunctive relief, opposed a demurrer, propounded more than 700 discovery requests, demanded a jury trial in their case management conference statement and represented they would be litigating substantive motions, and posted jury fees. It was not until the opposing party filed a cross-complaint that the litigants filed the motion to compel arbitration—more than six months into the litigation in court. Does the litigants' conduct in this case constitute a waiver under *Quach*? We conclude it does, and affirm the trial court's order denying the motion to compel.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Relationship between the parties*

Stephen Hofer is a licensed attorney who founded Aerlex Law Group (the Group), which specializes in aviation law.

In 2008, Hofer was the sole partner of the Group and hired Vicky Boladian as a part-time contract attorney.

Hofer and Boladian dispute whether their professional relationship became a romantic relationship between 2011 and 2017.

#### B. *Formation of Aerlex Tax Services, LLC*

In 2013, Hofer and Boladian formed Aerlex Tax Services, LLC (the tax LLC), which would provide "tax-related services" to the Group's clients and "others within the aviation industry." Hofer had a 55 percent equity interest in the tax LLC; Boladian, a 45 percent interest.

In 2017 and 2018, Hofer and Boladian had a falling out, which resulted in litigation. In September 2020, they agreed to settle the pending litigation by executing three agreements:

— *Settlement Agreement.* In this agreement, Hofer, Boladian and the Group agreed to dismiss all pending litigation and to vest "sole decision-making power" regarding the day-to-day operation of the tax LLC in Boladian. They also agreed to meet, mediate and then arbitrate "[i]n the event of a dispute among the Parties regarding the enforcement or interpretation of th[e Settlement] Agreement or any right of any Party hereto."

—*Amended and Restated Operating Agreement for the tax LLC (amended operating agreement).* In this agreement, Hofer, Boladian and the tax LLC altered the terms of the original operating agreement for the tax LLC. They also agreed to meet,

mediate and then arbitrate any "dispute among the Members/Managers regarding the interpretation of this Agreement or any right of any Party hereto."

— *Amended and Restated Buy-Sell Agreement of the tax LLC (amended buy-sell agreement).* In this agreement, Hofer, Boladian and the tax LLC altered the terms of the original buy-sell agreement for the tax LLC. They also agreed to follow the dispute resolution process set forth in the amended operating agreement.

### C. *Transfers of assets*

In March 2023, Boladian asked Hofer to change the business form of the tax LLC to an LLP to avoid the potential of having a limited liability company engaged in the unauthorized practice of law. In August 2023, Hofer and Boladian dissolved the tax LLC and shifted its assets to Aerlex Tax Services, LLP (the tax LLP)—with the same 55/45 percent split of ownership.

### D. *Boladian withdraws from the tax LLP*

Two weeks later, Boladian formed the Boladian Aviation Law Group, APC (BALG). She then withdrew from the tax LLP, removing what she represented to be 45 percent of the physical office furniture and nearly all of the tax LLP's clients.

On September 19, 2023, Hofer sent Boladian a letter exploring a possible settlement before "commencing formal litigation" and asserting his "free[dom] to seek a judicial resolution" of their disputes. The parties discussed mediation, but could not agree on a mediator.

## II. Procedural Background

### A. *Complaint*

On October 16, 2023, Hofer, the Group, the tax LLC and the tax LLP (collectively, the Hofer plaintiffs) filed a lawsuit

against Boladian and BALG. The Hofer plaintiffs alleged 13 causes of action[2] and sought compensatory damages, injunctive and equitable relief, treble damages, punitive damages, and attorney fees. Although Hofer had, prior to filing the complaint, "agree[d] to file in arbitration" if Boladian consented to BALG participating in arbitration, the Hofer plaintiffs in the complaint nowhere mentioned arbitration under any of the three agreements and did not pray for an order compelling arbitration.

## B.     *Litigation of the complaint*

### 1.     *Seeking provisional relief*

On October 31, 2023, the Hofer plaintiffs applied ex parte for a temporary restraining order (TRO) seeking to prevent Boladian and BALG from performing any work for the clients of the tax LLP or the Group, from using any of the tax LLP's employees, and from removing or using any tangible property or data taken from the tax LLP. As part of the motion, the Hofer plaintiffs argued that their lawsuit had merit. Nowhere in the application did they mention arbitration under any of the agreements. The trial court denied the application on November 2, 2023, finding that the Hofer plaintiffs had "not demonstrated that they have an inadequate remedy at law." On November 16, 2023, the Hofer plaintiffs moved for a preliminary injunction,

---

[2]     Those causes of action are for (1) breach of the settlement agreement, (2) breach of the amended operating agreement and the amended buy-sell agreement, (3) breach of the implied covenant of good faith and fair dealing, (4) breach of fiduciary duty, (5) intentional misrepresentation, (6) fraud in the inducement, (7) wrongful dissociation, (8) conversion, (9) intentional interference with contractual relations, (10) computer data access and fraud, (11) receipt of stolen property, (12) unlawful business practices, and (13) declaratory relief.

trying to remedy the defects with their earlier TRO application. Once again, the Hofer plaintiffs argued their lawsuit had merit and nowhere mentioned arbitration. Following a round of briefing, the trial court denied relief in a 17-page order on December 12, 2023. The court ruled partly that the Hofer plaintiffs' claims lacked merit (because they had not shown that Hofer's list of aviation clients constituted "confidential trade secret information" or that the tax LLC agreement's "non-compete clause is applicable or enforceable"), and partly that the Hofer plaintiffs had not shown any "irreparable harm."

In the midst of these motions, the Hofer plaintiffs inquired whether Boladian and BALG would "be seeking to move this case into arbitration"; counsel responded that they had "no plans" to do so and this communication shed no light on the Hofer plaintiffs' intent to do so.

### 2. *Demurrer*

On December 8, 2024 (while the Hofer plaintiffs' motion for a preliminary injunction was still pending), Boladian and BALG demurred to nine of the 13 causes of action.[3] Following briefing, including the Hofer plaintiffs' request for sanctions, and a hearing, the trial court on March 27, 2024 overruled the demurrer as "untimely." The court denied the Hofer plaintiffs' request for sanctions as "procedurally improper."

### 3. *Discovery*

On January 29, 2024, the Hofer plaintiffs propounded a total of 734 discovery requests to Boladian and BALG—namely,

---

[3] Specifically, they demurred to all claims except those for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, unlawful business practices, and declaratory relief.

6

159 requests for production, 203 special interrogatories, 323 requests for admissions, and 49 form interrogatories. On February 29, 2024, Boladian and BALG requested extensions to respond, which the Hofer plaintiffs opposed and the trial court granted.

The Hofer plaintiffs also subpoenaed a number of third-party witnesses for depositions in February 2024. They also noticed the deposition of Boladian for March 2024.

Because the parties could not agree on dates for the depositions, they set an informal discovery conference.

4. *Case management conference*

In anticipation of the case management conference, the Hofer plaintiffs on March 14, 2024, filed a case management statement. In some respects, the Hofer plaintiffs' case management statement acknowledged the possibility of arbitrating the dispute: They checked the box indicating that they were "willing to participate" in "[m]ediation," a "[s]ettlement conference" and "[b]inding private arbitration"; they reported that "[t]his case belongs in arbitration"; they represented that the parties were "meeting and conferring . . . on this issue prior to filing a motion to compel arbitration"; and they stated that "[p]rompt scheduling of a hearing on a motion to compel arbitration" might be "necessary." In other respects, however, the Hofer plaintiffs' case management statement indicated that they sought to pursue the matter to resolution in court: They demanded a "jury trial"; they anticipated a 10- to 15-day trial; and they "anticipate[d] bringing a motion to compel third-party depositions, a motion for summary judgment, and motions in limine." The Hofer plaintiffs also posted their jury fees.

7

At the March 29, 2024, case management conference, the trial court set a November 2024 status conference for discovery, alternative dispute resolution, and motions; the court also set an August 2025 trial date.[4]

### C. *Cross-complaint*

On April 23, 2024, Boladian filed a cross-complaint against Hofer and the Group, alleging five causes of action.[5]

### D. *Motion to compel arbitration*

On April 26, 2024—more than six months after filing their complaint and more than four months after the denial of the preliminary injunction, but just three days after the filing of the cross-complaint—the Hofer plaintiffs filed a motion to compel arbitration, invoking the arbitration clauses in the settlement agreement, amended operating agreement, and amended buy-sell agreement.

---

[4] Although the Hofer plaintiffs claim on appeal that they objected to the setting of a trial date, the sole evidence they point to is not in the reporter's transcript of the case management conference but rather their unsupported and subsequent characterization of what happened at that conference as set forth in their reply brief on the motion to compel arbitration and counsel's statement at a later hearing that the "issue" of arbitration was "raised . . . at the case management conference," neither of which suffices. (Accord, *Muskan Food & Fuel, Inc. v. City of Fresno* (2021) 69 Cal.App.5th 372, 389-390; *Gilman v. Dalby* (2021) 61 Cal.App.5th 923, 940; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590.)

[5] Those causes of action are for (1) express contractual indemnity, (2) implied contractual indemnity, (3) equitable indemnity, (4) breach of contract, and (5) breach of fiduciary duty.

After a full round of briefing and a hearing, the trial court denied the motion in an 11-page order on June 21, 2024. The court sidestepped whether the disputes at issue fell within the scope of any of the arbitration clauses, whether the Group and the tax LLP could compel arbitration notwithstanding that one or both of them were non-signatories to each agreement, and whether BALG could be compelled to arbitration notwithstanding its status as a non-signatory to any agreement, ruling instead that the Hofer plaintiffs had waived their right to compel arbitration. Applying the waiver standard articulated in *St. Agnes*, *supra*, 31 Cal.4th 1187, the court found "that [the Hofer plaintiffs] waived the right to arbitrate by filing suit in this court and substantially and vigorously litigating it for over seven months," concluding that this conduct was "fundamentally incompatible with the expediency, efficiency, and cost-effectiveness associated with utilizing arbitration" and that this conduct "prejudiced" Boladian and BALG.

**E.** *Appeal*

The Hofer plaintiffs filed this timely appeal.

## DISCUSSION

The Hofer plaintiffs argue that the trial court erred in finding they had waived their right to compel arbitration, chiefly because the trial court applied the then-binding test for waiver set forth in *St. Agnes*, *supra*, 31 Cal.4th 1187, which our Supreme Court overruled in *Quach*, *supra*, 16 Cal.5th 562, a month after the trial court's ruling. Because *Quach* applies retroactively to this direct appeal (*Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 878), and because we may affirm a trial court's ruling on any correct ground (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19), we will follow the protocol

9

set forth in *Quach* itself by "reviewing de novo the undisputed record[6] of the trial court proceedings and asking whether" a finding of waiver is warranted under *Quach*'s newly articulated test. (*Quach*, at p. 585; *Campbell*, *supra*, 105 Cal.App.5th at p. 428.)[7]

## I.    *Quach*'s Test for Evaluating Waiver

The Act provides that where there is a contract-based agreement to arbitrate a dispute, courts must enforce that agreement "unless," as pertinent here, "[t]he right to compel arbitration has been waived."[8] (§ 1281.2, subd. (a); *Quach*, *supra*, 16 Cal.5th at p. 578.) Unfortunately, the Act does not define "waiver." (*Quach*, at p. 578.) In *Quach*, our Supreme Court held that the Act uses "the same principles [of waiver] that apply to other contracts" and thus "look[s] to generally applicable law" regarding waiver. (*Id.* at pp. 569, 578.) "To establish waiver

---

6    The undisputed *record* may be comprised of disputed and undisputed *facts*; we may weigh that evidence and make our own findings regarding waiver under *Quach*'s test. (Accord, *Campbell v. Sunshine Behavior Health, LLC* (2024) 105 Cal.App.5th 419, 428 (*Campbell*).)

7    The parties also ask us to apply *Quach*'s test rather than remand for the trial court to do so. The Hofer plaintiffs alternatively argue that they effectively win by default because Boladian and BALG did not "refute" all of their arguments, but this ignores that Boladian and BALG *did* offer arguments in response; that the Hofer plaintiffs do not find those arguments persuasive does not amount to a concession.

8    The parties presume that the Act applies; regardless, as discussed herein, the test for waiver of the right to arbitrate is the same under both California and federal law.

10

under generally applicable contract law," *Quach* held, "the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party [(1)] knew of the contractual right and [(2)] intentionally relinquished or abandoned it." (*Id.* at p. 584.) Knowledge of the right to arbitrate "may be 'actual or constructive.'" (*Ibid*.) Intentional relinquishment or abandonment of the right to arbitrate may be (1) express, by "evidence of words expressing an intent to relinquish the right," or (2) implied, by "conduct"—including "litigat[ing] the case" in a judicial forum—"that is so inconsistent with an intent to enforce the contractual right [to arbitrate] as to lead a reasonable fact finder to conclude that the party had abandoned it." (*Id.* at pp. 569, 584; see generally *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 [looking to conduct is appropriate in assessing waiver].)[9]

In ruling that the Act adopts the generally applicable definition of waiver, *Quach* abolished the arbitration-specific definition of waiver most clearly articulated in *St. Agnes*, *supra*, 31 Cal.4th 1187. (*Quach*, *supra*, 16 Cal.5th at p. 569.) *St. Agnes*'s arbitration-specific definition of waiver called upon trial courts to evaluate six different factors—namely, "'"(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before

[9]    A party's bad faith or willful misconduct used to be a basis for establishing waiver. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 983; *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 782 (*Christensen*), overruled in part by *Quach*, *supra*, 16 Cal.5th 562.) Our Supreme Court has yet to assess whether it remains so. (*Campbell*, *supra*, 105 Cal.App.5th at p. 432, fn. 5.)

the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled or prejudiced' the opposing party.'"'" (*Id.* at p. 1196.)  Despite the multi-factor nature of this test, *St. Agnes* made clear that "[t]he presence or absence of prejudice from the litigation of the dispute is the determinative issue . . . ." (*Id.* at p. 1203, citing *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 188 (*Doers*), overruled in part by *Quach*, *supra*, 16 Cal.5th 562.)  Prejudice includes, but is not limited to, "judicial litigation of the merits of arbitrable issues." (*St. Agnes*, at p. 1203.)

In abandoning *St. Agnes*'s arbitration-specific test for waiver, *Quach* followed the lead of federal authority.  *St. Agnes*'s arbitration-specific test had borrowed from—and mirrored—the federal courts' enforcement of the ""'policy'"" under the Federal Arbitration Act to ""'favor[] arbitration'"" (*Quach*, *supra*, 16 Cal.5th at p. 575), but the United States Supreme Court, in *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 418 (*Morgan*), held that this policy "does not authorize federal courts to invent special, arbitration-preferring procedural rules."  *Quach* reasoned that *Morgan*'s analysis "applies with equal force in the context of the" Act.  (*Quach*, at p. 577.)  More to the point, *Quach* elaborated, the policy favoring arbitration was not meant to put arbitration contracts on *better* footing than other contracts, but

12

rather to guarantee that arbitration contracts were put on "equal footing" with other contracts. (*Id.* at pp. 578-580.)

*Quach*'s test for evaluating whether a party has waived its right to compel arbitration differs from *St. Agnes*'s test in three significant ways. First, *St. Agnes*'s arbitration-specific test for waiver required the party opposing a motion to compel arbitration on waiver grounds to prove *both* dilatory conduct by the party seeking to compel arbitration *and* prejudice arising from that conduct. (*St. Agnes, supra,* 31 Cal.4th at p. 1203; see also *Quach, supra,* 16 Cal.5th at p. 581 [referring to *St. Agnes*'s "standards" as being "stringent"].) Under *Quach*, prejudice is no longer "determinative" or, for that matter, even "relevant." (*Quach,* at pp. 573-575, 585.) By focusing solely on whether the words and conduct of the party seeking to compel arbitration evince a relinquishment or abandonment of the right to arbitrate, *Quach* eliminated the prejudice requirement and made proving waiver easier. Second, *St. Agnes*'s arbitration-specific test for waiver turned on a multitude of factors. *Quach* observed that some factors were more pertinent to equitable defenses *other than* waiver, "such as forfeiture, estoppel, laches or timeliness." (*Id.* at p. 584.) By directing courts to apply the generally applicable standard that "consider[s] only those factors that are relevant to" waiver, *Quach* narrowed the test for waiver and, in that respect, made proving waiver harder. (*Ibid.*) Third, *St. Agnes*'s arbitration-specific test for waiver required the party asserting waiver to prove waiver of arbitration by a preponderance of the evidence. *Quach* raised that standard of proof by requiring the party to prove waiver by clear and convincing evidence—that is, by evidence making it "'highly probable'" the party seeking to arbitrate knew of the contractual

13

right and intentionally relinquished or abandoned it. (*Id.* at p. 584.) In this regard, *Quach* made proving waiver harder.

## II. Application of the *Quach* Test

We independently conclude that Boladian and BALG established by clear and convincing evidence that the Hofer plaintiffs waived their right to compel arbitration. (See *Quach*, *supra*, 16 Cal.5th at p. 585, fn. 6 [framing issue on de novo review].)

There is no dispute that the Hofer plaintiffs knew of the contractual right to seek arbitration of the parties' dispute. Hofer executed all three agreements containing arbitration clauses (while the Group executed only the settlement agreement and the tax LLP's predecessor executed only the amended operating agreement and amended buy-sell agreement). Hofer also asked Boladian, prior to filing suit, if she wished to arbitrate, thereby evincing his awareness of his contractual right to seek arbitration.

The record also establishes, by clear and convincing evidence, that the Hofer plaintiffs intentionally relinquished or abandoned that right. They engaged in over four months' worth of litigation of their claims in court before they ever uttered a peep about arbitration:

—Although Hofer asked Boladian about arbitration prior to filing suit, the Hofer plaintiffs filed a 13-claim complaint that nowhere seeks to compel arbitration and does not even mention possible arbitration of the claims at all.

—The Hofer plaintiffs filed successive motions for injunctive relief—a TRO and then a preliminary injunction—that nowhere mentioned arbitration was a possibility.

14

— The Hofer plaintiffs propounded hundreds of discovery requests upon Boladian and BALG, which they themselves have characterized as "comprehensive."[10]  The Hofer plaintiffs also set the depositions of Boladian and third-party witnesses.

—Although the Hofer plaintiffs sent an email to Boladian on March 7, 2024 to meet and confer about a possible motion to compel arbitration and although, in their case management statement, they relayed that they had sent this email, expressed a "willing[ness] to participate" in "arbitration," and indicated that "[p]rompt scheduling of a hearing on a motion to compel arbitration" might be "necessary," the Hofer plaintiffs in that very same case management statement demanded a two-week jury trial and anticipated filing several discovery and dispositive motions.

—The Hofer plaintiffs posted jury fees.

It was not until April 26, 2024—just three days after being counter-sued—that the Hofer plaintiffs filed their motion to compel arbitration.  The Hofer plaintiffs waited six months after filing suit to move to compel arbitration and waited nearly five months after filing suit to raise the possibility of arbitration to the trial court in their case management statement, all the while litigating the case vigorously in the trial court.  What is more, they provided the trial court no credible explanation for this delay.  Unexplained delay in seeking arbitration, while proceeding with litigation in court without mentioning or seeking to preserve the right to arbitrate, constitutes powerful evidence of the relinquishment and abandonment of the right to arbitrate— including delays comparable to the delay in this case.  (*Davis v.*

---

[10]    In their reply brief, the Hofer plaintiffs backtracked to characterize the discovery as "[l]imited [e]ngagement."

15

*Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 968 (*Davis*) ["'extended silence and much delayed demand for arbitration' cuts strongly in favor of a finding of waiver"]; see *Campbell*, *supra*, 105 Cal.App.5th at p. 432 [noting that "'four- to six-month delay in enforcing the right to arbitrate may result in a finding of waiver if the party acted inconsistently with the intent to arbitrate during that window'"]; *Semprini v. Wedbush Securities Inc.* (2024) 101 Cal.App.5th 518, 527 [same]; cf. *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1478-1479 [two-month delay while seeking discovery insufficient to constitute waiver due to lack of "prejudice" under *St. Agnes* test].) The Hofer plaintiffs insist that they could not have sought to compel arbitration of the cross-complaint until it was filed, and note that they filed their motion three days after its filing. To the extent the Hofer plaintiffs suggest that we should ignore the nearly six months of delay prior to that, and thereby treat the filing of the cross-complaint as hitting the proverbial "reset button," we reject that suggestion as unsupported by the law of waiver or its underlying rationale.

The Hofer plaintiffs offer what boil down to four arguments for why the record does not support a finding of waiver.

First, they argue that much of their litigation conduct— such as filing suit and propounding discovery—is not sufficient by itself to constitute waiver.[11]

For starters, we reject the Hofer plaintiffs' assumption that we should take a divide-and-conquer approach by examining

---

11    The Hofer plaintiffs also argue that their conduct in opposing the demurrer filed by Boladian and BALG is not evidence of waiver, but we do not rely on that conduct so need not address that argument.

whether each aspect of their litigation conduct *by itself* demonstrates a waiver; the inquiry into whether it is "highly probable" the party has, by their conduct, intentionally relinquished or abandoned the right to arbitrate takes into account the totality of that conduct. (See *Quach*, *supra*, 16 Cal.5th at pp. 586-587 [considering various conduct in litigation]; see generally *Armstrong v. Michaels Stores, Inc.* (9th Cir. 2023) 59 F.4th 1011, 1015 [under *Morgan*, courts must examine "'the totality of the parties' actions'" to determine "whether those actions holistically 'indicate a conscious decision . . . to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate'"].) The Hofer plaintiffs attack only two of the five instances of conduct we have relied upon to find waiver.

Their arguments urging us to disregard those two instances also lack merit. Citing *Doers*, *supra*, 23 Cal.3d 180, the Hofer plaintiffs argue that "the mere filing of a lawsuit does not constitute a waiver of the right to arbitrate." (*Id.* at pp. 183, 188.) But *Doers* so held while applying the now-defunct definition of waiver that required prejudice to the other party— whether through litigation of the "merits of the dispute" or otherwise. (*Id.* at pp. 186, 188.) *Doers* is also not directly on point because, as noted above, the Hofer plaintiffs did not merely file a lawsuit; they vigorously litigated that lawsuit in court for the ensuing six months. The Hofer plaintiffs also argue that their exhaustive propounding of discovery is not evidence of waiver because they did not end up obtaining any useful responses. While prior cases found that propounding discovery was prejudicial to the other side where that discovery yielded useful information not discoverable in arbitration (*St. Agnes*,

17

*supra*, 31 Cal.4th at p. 1204; *Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1367; *Oregel v. PacPizza, LLC* (2015) 237 Cal.App.4th 342, 360), prejudice is irrelevant under *Quach*; indeed, *Quach* expressly found that engaging in discovery, even if ultimately unhelpful, was "markedly inconsistent with an intent to arbitrate."[12]  (*Quach*, *supra*, 16 Cal.5th at p. 587.)  Thus, a party's conduct in actively propounding discovery in court is still relevant to show an intent to litigate in court rather than to arbitrate.

Second, the Hofer plaintiffs argue that their use of a judicial forum should not be deemed a waiver because it was "necess[ary]."

They assert they needed to file a lawsuit because only a court could issue the TRO and preliminary injunction they needed to stave off Boladian's and BALG's harmful conduct; section 1281.8, they note, explicitly sanctions such resort to the courts and specifies that such conduct does not constitute a waiver.  We reject this assertion.  Although section 1281.8 does specify that "appl[ying] for a provisional remedy" such as a TRO or preliminary injunction in court "shall not operate to waive any right of arbitration," the statute conditions such non-waiver upon the applicant simultaneously "present[ing] to the court an application that all other proceedings in the action be stayed pending . . . arbitration."  (§ 1281.8, subds. (b) & (d); *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 177 ["'Provisional relief' as used in the statute includes preliminary injunctions and

_____

**12**     We accordingly deny as irrelevant the Hofer plaintiffs' request to judicially notice the applicable arbitration rules, which they proffer to show they could have obtained the same information in arbitration.

18

temporary restraining orders"].) The Hofer plaintiffs did not apply for a stay at the time they filed their complaint, and the *Simms v. NPCK Enterprises, Inc.* (2003) 109 Cal.App.4th 233, 241, decision excusing that requirement did so due to lack of prejudice, which is now irrelevant. But even if we assume the Hofer plaintiffs had to go to court to seek provisional relief, they *remained* in court for another four-plus months after the last of that relief was denied; this additional litigation in court was not "necessary." (Accord, *Sprunk v. Prisma LLC* (2017) 14 Cal.App.5th 785, 798 [delay in moving to compel arbitration after alleged reason for initially filing lawsuit constitutes evidence of waiver].)

The Hofer plaintiffs also assert they needed to file a lawsuit because they were unsure whether BALG, as a non-signatory to all three contracts, could be compelled to arbitrate. We also reject this assertion. The Hofer plaintiffs could have promptly moved for arbitration against only Boladian or against both defendants and obtained a ruling from the court about whether BALG was bound by the three agreements. (§ 1281.2, subd. (c); accord, *Berman, supra*, 80 Cal.App.4th at pp. 1372-1373 [party with some claims subject to arbitration and some not subject to arbitration waives right to compel arbitration as to arbitrable claims by litigating all claims in court rather than severing the arbitrable from non-arbitrable claims].) Instead, the Hofer plaintiffs sued Boladian and BALG, and litigated against *both* for six months before moving to compel arbitration.

Third, the Hofer plaintiffs argue that they did not engage in conduct that is "so inconsistent with an intent to enforce the[ir] contractual right" to arbitrate (*Quach, supra*, 16 Cal.5th at p. 584)—and thus did not intentionally relinquish or abandon their

19

right to compel arbitration—because they "consistently sought to abide by" the arbitration clauses in the three agreements. Specifically, they point out that Hofer asked Boladian about arbitration in September 2023 prior to filing suit, sent a meet-and-confer email to Boladian and BALG regarding a possible motion to compel arbitration in early March 2024, and indicated a willingness and intent to seek arbitration in their case management statement in mid-March 2024. The pre-complaint inquiry is of little consequence because ascertaining that the opposing party is unwilling to arbitrate is a prerequisite to petitioning a court to compel arbitration (*Rosenson v. Greenberg Glusker Fields Claman & Machtinger LLP* (2012) 203 Cal.App.4th 688, 694), but the Hofer plaintiffs' complaint did not seek arbitration under the agreements or even mention it. More broadly, the Hofer plaintiffs' occasional mentions of arbitration in September 2023 and March 2024 do not cast any doubt upon our conclusion that their course of conduct as a whole indicates a clear abandonment of their right to arbitrate. That is because merely mentioning a desire to arbitrate does not indicate an intent to arbitrate absent some *action* (*Leger v. R.A.C. Rolling Hills, LP* (2022) 84 Cal.App.5th 240, 246 [""[m]ere announcement of the right to compel arbitration is not enough"""; the right must be "invoke[d]" to avoid waiver]; *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 213, 215-216 ["rais[ing] the arbitration[] issue" but "d[oing] nothing to bring about arbitration for approximately six months"; wavier]; *Quach*, at pp. 586-587 [alleging arbitration as an affirmative defense in answer but not acting on it; waiver]); here, there was no action until the April 2024 motion to compel arbitration. More to the point, these sporadic mentions occurred in the midst of the Hofer plaintiffs'

otherwise dogged pursuit of litigation. At most, the Hofer plaintiffs were running hot and cold about arbitration, with the cold predominating during the four-plus months where they litigated in court while saying mum about arbitration. (See *Burton v. Cruise* (2010) 190 Cal.App.4th 939, 945 [waiver, where party "blow[s] hot and cold by pursuing a strategy of courtroom litigation only to turn towards the arbitral forum at the last minute"]; *Davis*, *supra*, 84 Cal.App.5th at pp. 959, 969 [waiver, where party takes wait-and-see approach by mentioning arbitration but not acting on it]; *Christensen*, *supra*, 33 Cal.3d at p. 784 ["'The courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration'"]; *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 555 ["in litigation as in life, you can't have your cake and eat it too"].)

Fourth and finally, the Hofer plaintiffs argue that the facts of this case are not as indicative of waiver as those in *Quach*. As a threshold matter, *Quach* did not purport to set the floor for the conduct constituting a waiver, and the inquiry into whether conduct as a whole constitutes a waiver is necessarily fact-specific. Further, the facts of this case are comparable to those constituting a waiver in *Quach*. In *Quach*, the court found waiver of the right to compel arbitration by a defendant who asserted arbitration as an affirmative defense in its answer, but waited 13 months to move to compel arbitration—using the interim months to propound discovery, to indicate in its case management statement that it would be filing dispositive motions on the merits (and not to indicate a willingness to engage in arbitration), and to post jury fees. (*Quach*, *supra*, 16 Cal.5th at pp. 570, 586-587.) Here, as noted above, we conclude there

21

was waiver by a party who waited six months to move to compel arbitration—using the interim months to seek provisional relief, to propound discovery, to indicate in its case management statement a desire for a jury trial as well as arbitration, and to post jury fees. And unlike the party-*defendant* in *Quach*, the Hofer plaintiffs are party-*plaintiffs* who have *initiated* litigation; as our Supreme Court has noted, the waiver analysis is "significant[ly]" "differen[t]"—and waiver is more likely—when "it is the plaintiff who seeks to change course." (*Christensen*, *supra*, 33 Cal.3d at p. 782, italics omitted.)

\* \* \*

In light of our conclusion that the Hofer plaintiffs waived the right to compel arbitration, we have no occasion to reach the questions of whether the arbitration clauses in any of the three agreements cover the parties' disputes, whether the non-signatories to the three agreements can compel arbitration or be compelled to arbitration, and whether the Hofer plaintiffs' alleged breach of the three agreements estops them from seeking to compel arbitration.

## DISPOSITION

The order is affirmed. Boladian and BALG are entitled to their costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>**.


_____, P. J.
HOFFSTADT

We concur:


_____, J.

MOOR


_____, J.

KIM (D.)